# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| **DOUGLAS CHIODINI**, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>**BH MANAGEMENT SERVICES, LLC,**<br><br>    Defendant. | **Case No. 6:23-cv-147-CEM-DCI**<br><br>**CLASS ACTION** |

**TIME-SENSITIVE JOINT MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION <u>SETTLEMENT AND APPROVAL OF PROPOSED NOTICE PLAN</u>**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS.................................................................................i

TABLE OF AUTHORITIES ....................................................................... iii

I.      TIME-SENVSATIVE NATURE .....................................................1

II.     SETTLEMENT OVERVIEW .........................................................1

III.    BACKGROUND.............................................................................3

IV.     THE SETTLEMENT .......................................................................5

        a.      The Proposed Settlement Classes .......................................5

        b.      Monetary Relief...................................................................6

        c.      Non-Monetary Contractual Relief.......................................7

        d.      Opt-Out Provisions..............................................................8

        e.      Mutual Release.....................................................................9

        f.      Class Representative Award .................................................9

        g.      Attorneys' Fees and Expenses.............................................10

        h.      Notice and Administration ..................................................11

V.      PRELIMINARY   APPROVAL   OF   THE   SETTLEMENT   IS
        WARRANTED ...............................................................................11

        A.      The  Proposed  Settlement  Classes  Satisfy  the  Certification
                Requirements of Rule 23......................................................14

                1.      Rule 23(b)(3) Predominance ....................................15

                2.      Rule 23(a)(1)–Numerosity .......................................16

                3.      Rule 23(a)(2) – Commonality ..................................17

4.     Rule 23(a)(3) –Typicality ........................................................19

5.     Rule 23(a)(4)–Adequacy of Representation .............................19

6.     Rule 23(b)(3)–Class Action is Superior to Other Available Methods to Resolve This Controversy.....................................21

B.     The Proposed Settlement Is Fair, Adequate and Reasonable .............22

1.     The Class Representatives and Class Counsel Have Adequately Represented the Class ...........................................23

2.     The Proposed Settlement Was Negotiated at Arm's Length .....23

3.     The Relief Provided to the Class is Adequate ..........................25

     a.     The costs, risks, and delay of trial and appeal................27

     b.     The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims ................................28

     c.     The terms of any proposed award of attorney's fees, including timing of payment ...........................................29

     d.     Any agreement required to be identified under Rule 23(e)(3).........................................................................35

4.     The proposal treats class members equitably relative to one another...................................................................................35

VI.     THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS .............................37

VII.     CONCLUSION ...........................................................................39

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                    <u>**Pg(s)**</u>

Accord Mees v. Skreened, Ltd.,
　　No. 14-cv-142, 2016 WL 67521 (S.D. Ohio Jan. 6, 2016) .............................24

Adams v. S. Farm Bureau Life Ins. Co.,
　　417 F. Supp. 2d 1373 (M.D. Ga. 2006), aff'd., 493 F.3d 1276
　　(11th Cir. 2007) ........................................................................................37

Agan v. Katzman & Korr, P.A.,
　　222 F.R.D. 692 (S.D. Fla. 2004) ........................................................ 16, 17

Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co.,
　　12 So. 3d 850 (Fla. 3d DCA 2009) ..............................................................10

Amchem Prods. v. Windsor,
　　521 U.S. 591 (1997) ...................................................................................14

Archbold v. Wells Fargo Bank, N.A.,
　　No. 13-cv-24599, 2015 WL 4276295 (S.D. W. Va. July 14, 2015)................24

Armstead v. Pingree,
　　629 F. Supp. 273 (M.D. Fla. 1986)...................................................... 17, 18

Bluetooth Headset,
　　654 F.3d 935 (9th Cir. 2011) ......................................................................30

Boeing Co. v. Van Gemert,
　　444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) ....................................29

Brown v. Lohman Property Management, et. al.,
　　Case No. 16-2018-CA-008274, Duval County, Florida ................................16

Brytus v. Spang & Co.,
　　203 F.3d 238 (3d Cir. 2000) .......................................................................31

Busby v. JRHBW Realty, Inc.,
　　513 F.3d 1314 (11th Cir. 2008)....................................................... 15, 20, 21

Camden I Condominium Assn. v. Dunkle,
　　946 F.2d 768 (11th Cir.1991) ............................................................. 29, 33

*Camp v. City of Pelham*,
  No. 10-cv-01270, 2014 WL 1764919 (N.D. Ala. May 1, 2014) .....................36

*Churchill Vill., LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ........................................................38

*City of St. Petersburg v. Total Containment, Inc.*,
  265 F.R.D. 630 (S.D. Fla. 2010) ...................................................20

*Cotton v. Hinton*,
  559 F.2d 1326 (5th Cir. 1977) ......................................................24

*Cox v. American Cast Iron Pipe Co.*,
  784 F.2d 1546 (11th Cir. 1986)......................................................17

*David v. American Suzuki Motor Corp.*,
  2010 WL 1628362 (S.D.Fla. April 15, 2010) ..................................30

*Drossin v. Nat'l Action Financial Services, Inc.*,
  255 F.R.D. 608 (S.D. Fla. 2009) .............................................. 14, 16

*Duhaime v. John Hancock Mut. Life–Ins. Co.*,
  183 F.3d 1 (1st Cir.1999) ............................................................30

*Eisen v. Carlisle & Jaqueline*,
  417 U.S. 156 (1974) ...................................................................37

*Elkins v. Equitable Life Ins. Co.*,
  1998 WL 133741 (M.D. Fla. Jan. 27, 1998) ..................................34

*Faught v. Am. Home Shield Corp.*,
  No. 07-cv-1928, 2010 WL 10959223 (N.D. Ala. Apr. 27, 2010), *aff'd.*,
  688 F.3d 1233 (11th Cir. 2011)................................................. 25, 38

*Fuller v. Becker & Poliakoff, P.A.*,
  197 F.R.D. 697 (M.D. Fla. 2000) ................................................16

*Handsche v. Special Serv. Div.*,
  787 F.2d 828 (2d Cir. 1986) ........................................................38

*Hardt v. Reliance Standard Life Ins. Co.*,
  560 U.S. 242, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) ................................29

iv

*Haynes v. Logan Furniture Mart, Inc.*,
  503 F.2d 1161 (7th Cir. 1974) ....................................................................21

Hemphill v. San Diego Ass'n of Realtors, Inc.,
  225 F.R.D. 616 (S.D. Cal. 2004) ...............................................................24

*Hicks v. Client Servs.*,
  257 F.R.D. 699 (S.D. Fla. 2009) ................................................................22

*In re Alcoholic Beverages Litigation*,
  95 F.R.D. 321 (E.D.N.Y. 1982) .................................................................16

*In re AMF Bowling*,
  334 F. Supp. 2d 462 (S.D.N.Y. 2004)........................................................25

*In re Checking Account Overdraft Litig.*,
  281 F.R.D. 667 (S.D. Fla. 2012) ................................................................20

*In re Checking Account Overdraft Litigation*,
  830 F.Supp.2d 1330 (S.D.Fla.,2011) .........................................................29

*In re Corrugated Container Antitrust Litig.*,
  643 F.2d 195 (5th Cir. 1981) ...............................................................25, 26

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*,
  55 F.3d 768 (3d Cir.1995) ....................................................................30, 31

*In re Heartland Payment Sys., Inc.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012)................................................29, 31

*In re Home Depot Inc.*,
  931 F.3d 1065 (11th Cir. 2019)........................................................29, 31, 33

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99, 102 (S.D. NY 1997) ..........................................................23

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*,
  910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd.*, 739 F.3d 790 (5th Cir. 2014)......38

*In re Sw. Airlines Voucher Litig.*,
  898 F.3d 740 (7th Cir. 2018) .....................................................................32

*In re Terazosin Hydrochloride*,
   220 F.R.D. 672 (S.D. Fla. 2004) .................................................................18

*Johnston v. Comerica Mortgage Corp.*,
   83 F.3d 241 (8th Cir.1996) ................................................................. 30, 31

*Juris v. Inamed Corp.*,
   685 F.3d 1294 (11th Cir. 2012).................................................................37

*Keele v. Wexler*,
   149 F.3d 589 (7th Cir. 1998) .....................................................................18

*Kelly v. Sabretech Inc.*,
   195 F.R.D. 48 (S.D. Fla. 1999) .................................................................21

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004)..................................................................15

*Kornberg v. Carnival Cruise Lines, Inc.*,
   741 F.2d 1332 (11th Cir. 1984).......................................................... 18, 19

*Lazy Oil Co. v. Wotoco Corp.*,
   95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd.*, 166 F.3d 581 (3d Cir. 1999) . 25, 26

*Lee v. Ocwen Loan Serv., LLC*,
   No. 14-cv-60649, 2015 WL 5449813 (S.D. Fla. Sept. 14, 2015) ...................23

*Little v. T–Mobile USA, Inc.*,
   691 F.3d 1302 (11th Cir. 2012)..................................................................14

*Manno v. Healthcare Revenue Recovery Group, LLC*,
   289 F.R.D. 674 (S.D. Fla. 2013) ...............................................................18

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................ 37, 39

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ..............................................................26

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ......................................................................26

vi

*Pearson v. Ecological Sci. Corp.*,
  522 F.2d 171 (5th Cir. 1975) .......................................................................37

*Piazza v. Momentum Property Management, LLC*,
  Case No. 23-CA-000988, Hillsborough County, Florida..............................16

*Poertner v. Gillette Co.*,
  618 Fed. Appx. 624 (11th Cir. 2015) ...........................................................32

*Pottingar v. Miami*,
  720 F. Supp. 955 (S.D. Fla. 1989) ...............................................................18

*Powers v. Gov't Employees Ins. Co.*,
  192 F.R.D. 313 (S.D. Fla.1998) ...................................................................20

*Riordan v. Smith Barney*,
  113 F.R.D. 60 (N.D. Ill. 1986) .....................................................................17

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................25

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
  297 F.R.D. 683 (S.D. Fla. 2014) ..................................................................24

*Scholes v. Stone, McGuire & Benjamin*,
  143 F.R.D. 181 (N.D. Ill. 1992) ...................................................................21

*Sharf v. Fin. Asset Resolution, LLC*,
  295 F.R.D. 664 (S.D. Fla. 2014) ..................................................................22

*Shy v. Navistar Int'l Corp.*,
  No. 92-cv-333, 1993 WL 1318607 (S.D. Ohio May 27, 1993) .....................26

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  2006 WL 1232816 (M.D. Fla. May 5, 2006).................................................34

*Venerus v. Avis Budget Car Rental, LLC*,
  674 F. Supp. 3d 1107 (M.D Fla. 2023) .........................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011)..................................................................................18

*Warren v. Cook Sales, Inc.*,
  No. 15-cv-0603, 2017 WL 325829 (S.D. Ala. Jan. 23, 2017) ........................36

*Washington v. Brown & Williamson Tobacco Corp.*,
  959 F.2d 1566 (11th Cir. 1992).....................................................................14

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir.1999).....................................................................32

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009).....................................................................18

*Wolfe v. S2 Mathews, LP*, Case.
  No. 16-2022-CA-001434, Duval County, Florida ........................................16

## Statutes

Fed. R. Civ. P. 23 ....................................................................................*passim*

Fla. Stat. § 83.40 ...................................................................................*passim*

Fla. Stat. § 83.49 ...................................................................................*passim*

FRCP Rule 23 (Advisory Committee Notes to 2018 Amendments) ......................13

## Misc.

2 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS (FOURTH)
  § 8.32 (2002 ............................................................................................38

7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL
  PRACTICE AND PROCEDURE § 1797.6, at 200 (3d ed. 2005) .........................38

JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS: LAW AND PRACTICE
  § 6:28 at 197 (10th ed. 2013) ......................................................................36

MANUAL FOR COMPLEX LITIGATION (FOURTH) 21.632..................................25, 31

MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 ............................................24

McLaughlin on Class Actions § 6:7 (12th ed.) ......................................................35

Plaintiff, Douglas Chiodini, and Defendant, BH Management Services, LLC, (collectively, "Parties") by and through undersigned counsel, respectfully submit this time-sensitive memorandum of law in support of their Motion for Preliminary Approval of Class Action Settlement and Approval of Proposed Notice Plan Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.[1]

## I.    TIME-SENVSATIVE NATURE

Because of the nature of this settlement, the best evidence that the Parties possess to perform skip tracing is the recent address information provided by Defendant to the administrator. The more time that passes from the date when that address was valid, the greater likelihood that the Parties will have difficulty in reaching the Class through the skip trace. The Parties are prepared to perform the skip trace and to perform initial notice within sixty (60) days of preliminary approval and respectfully request that the Court issue an Order Granting Preliminary Approval before February 14, 2025. The parties will provide a proposed order top the Court by January 31, 2025.[2]

## II.   SETTLEMENT OVERVIEW

This is a class action for alleged violations of Florida Residential Landlord and Tenant Act ("FRLTA"), Fla. Stat. § 83.40 (3)(a) arising out of Defendant, BH

---

[1] Capitalized words and phrases in this memorandum are intended to coincide with the defined terms set forth in Section II of the proposed Settlement Agreement.

[2] The parties are aware that the Court's preferences are that proposed order not be submitted. However, given the complexity and length of an Order Granting Preliminary Approval, the parties have agreed to provide a word version proposed order that may be used as a resource for the Court.

Management Services, LLC's ("Defendant" or "BH Management") practices regarding the retention of all or a part of tenants' security deposits after tenant move out. Specifically, Plaintiff alleges that Defendant unlawfully withheld his security deposit without providing him with the required statutory notice, damaging him in an amount equal to the amount of the security deposit withheld. Defendant disputes that it was required to send Plaintiff the notice due to an exception in the applicable statute. Per the statute, if the statutory notice is not provided or if no exception applies, a landlord only has the right to pursue any alleged remaining amounts owed after it returns the security deposits withheld.

Through discovery the parties determined that Defendant withheld security deposits from 6,034 tenants who may not have received notice of Defendant's intent to retain the security deposit in the form required by the FRLTA. Although, some may have received a separate notice and others may have not required notice due to an exception.

After extensive negotiations with the involvement of a skilled mediator, the parties have agreed to settle this matter, with the understanding that the settlement represents neither a concession nor an admission by either party.

Under the Settlement Agreement, **Exhibit 1**, Defendant will create a fund to issue refunds of up to 50% of the security deposit amount withheld to the Class Members. If Defendant's records reflect that a class member owes Defendant a remaining balance, then the eligible amount of refund funds will be applied toward payment of any remaining balance reflected by Defendant's records. Upon issuing the

2

refunds and any alleged debt balance reduction, Defendant will release its right to pursue the balance created by the refunded security deposit amount from the Class members.  It will not release its right to pursue any additional balances that its records reflect are owed. This will result in class refund relief in the amount of $572,851.66 in cash payments and balance relief of $419,178.47.

Class Counsel's attorneys' fees have also been negotiated under the Settlement Agreement in the amount of $396,148.34 and litigation costs of $21,000.  Thus, a constructive common fund has been created for the benefit of the Class with a total value of $1,409,178.47.

## III.    BACKGROUND

Florida Statutes § 83.49 states:

> Upon the vacating of the premises for termination of the lease, if the landlord does not intend to impose a claim on the security deposit, the landlord shall have 15 days to return the security deposit together with interest if otherwise required, or the landlord shall have 30 days to give the tenant written notice by certified mail to the tenant's last known mailing address of his or her intention to impose a claim on the deposit and the reason for imposing the claim. **The notice shall contain a statement in substantially the following form**:
>
> > This is a notice of my intention to impose a claim for damages in the amount of __  upon your security deposit, due to __. It is sent to you as required by s. 83.49(3), Florida Statutes. You are hereby notified that you must object in writing to this deduction from your security deposit within 15 days from the time you receive this notice, or I will be authorized to deduct my claim from your security deposit. Your objection must be sent to (landlord's address).

3

> *If the Landlord fails to give the required notice within the 30-day
> period, he forfeits his right to impose a claim upon the security deposit.*

Fla. Stat. § 83.49(3)(a). (emphasis added). This language is not required to be provided to tenants who terminates a lease or vacates or abandons the premises without the required 7 days' notice.

On July 7, 2022, Chiodini signed a lease for an apartment owned by PBH Barrington, LLC, and managed by Defendant, BH Management. Pursuant to the Lease, Chiodini paid a security deposit in the amount of $400. The lease quoted the security deposit notice requirements of FRLTA, Fla. Stat. § 83.49(3)(a). Pursuant to the Lease, Chiodini moved out on the last day of the one-year lease, July 19, 2022. Upon move out, Defendant claimed that Chiodini had damaged the carpet and blinds, among other items. On July 18, 2022, BH Management transferred Chiodini's entire security deposit within his tenant portal to cover the alleged damages. On July 27, 2022, BH Management sent, via email, a letter to Chiodini stating that he owed $402.32 in addition to the $400 security deposit already withheld, and attached a moveout statement reflecting the cost of the carpet cleaning and blinds replacement. The moveout statement did not contain the language from the FRLTA quoted above, however, as noted above, the Parties disagree as to whether this language was required to be provided to Plaintiff.

This lawsuit was filed on January 27, 2023. After extensive discovery, including multiple depositions, dozens discovery discussions amongst the Parties, and emails regarding electronically stored information and accounting records, Defendant

identified approximately 6,034 tenants for whom a security deposit was withheld and a Move Out Statement substantially similar to that of the Plaintiff's was sent.

On February 9, 2024, Defendant revised its Move Out Statement form and practices to include the FRTLA language quoted above on all move out statements.

## IV.    THE SETTLEMENT

On March, 7, 2024, the parties held their first mediation conference, which resulted in an impasse. Thereafter, significant additional discovery was completed and Defendant retained new counsel.

Following extensive discovery, briefing of summary judgment [Dkts. 33, 35, 36, 39] and briefing of the class certification issue [Dkts. 44, 52], the Parties conducted two more mediation sessions on September 23, 2024, and October 29, 2024.

The Parties reached a settlement on December 16, 2024. A copy of the Settlement Agreement is attached as **Exhibit 1**, and the terms are summarized below.

### a.    The Proposed Settlement Classes

Defendant has agreed not to oppose certification of the following classes (collectively the "Settlement Class") for settlement purposes only:

> **The Security Deposit Class:** All persons in the State of Florida who (1) leased a dwelling unit in a property managed by BH Management; (2) did not receive a Fla. Stat. §83.49(3)(a) compliant notice letter; (3) had any portion of their security deposit retained; and (4) do not owe an alleged balance to BH Management or to the property owner.

There are 5,207 members of the Security Deposit Class.

**The Security Deposit Balance Class**:  All persons in the State of Florida who (1) leased a dwelling unit in a property managed by BH Management; (2) did not receive a Fla. Stat. §83.49(3)(a) compliant notice letter; (3) had any portion of their security deposit retained; and (4) allegedly owe a balance to BH Management or to the property owner.

There are 827 members of the Security Deposit Balance Class.

### b. Monetary Relief

Pursuant to the settlement, BH shall create a Settlement Class fund with an amount of $572,851.66 payable within thirty (30) days of final approval (the "Settlement Amount"). The amount will be dispersed as follows:

Each Security Deposit Class member who does not seek to exclude him/herself from the settlement will receive a Settlement Payment equal to the amount of 50% of each Security Deposit Class member's security deposit, totaling $541,528.00. By way of example, if a Security Deposit Class member "X" had a $400 security deposit withheld by BH Management, X would receive a $200 cash refund and a release from BH Management that will include, among other provisions, that BH Management will not attempt any further collection against X for the $200 security deposit monies that were returned to X.

Each Security Deposit Balance Class member who does not seek to exclude him/herself from the settlement will be eligible for up to 50% of the security deposit amount withheld. However, as further described below, 50% of the security deposit withheld will first be applied to the balance that Defendant's records reflect is owed, in an amount equal to three times (3x) 50% of the security deposit withheld. Only if the

6

Security Deposit Balance Class member fails to exercise their full debt relief will they be able to receive cash pro rata for the debt relief they did not exercise. BH Management will waive its right to pursue the balance its records reflect is owed, up to an amount equal to 3x 50 percent of the security deposit withheld, but will not waive its right to recover any remaining balance its records reflect is owed after crediting 3x 50 percent of the security deposit withheld. The Security Deposit Balance Class will receive $31,323.66 of cash relief and $419,178.47 of balance debt relief.

By way of example, if a Security Deposit Balance Class member "Y" had a $500 security deposit withheld and a $250 alleged balance then Y would be eligible for up to $250 in a cash refund (50% of the deposit). However, that $250 cash must first be applied to Y's debt balance, with up to $750 of debt relief available (3x the cash relief). When applying the $750 of debt relief to the balance of $250, Y only exercised 33.3% of their debt relief available. Therefore, Y would receive $167.50 in cash refund, $250 of balance debt relief, and a release from BH Management that will include, among other provisions, that BH Management will not pursue Y for the $167.50 returned nor the $250 alleged balance that was waived.

Any portion of the Settlement Amount remaining after the time for cashing checks has expired shall be paid to Legal Services of Greater Miami, as *cy pres* recipient.

### c.    Non-Monetary Contractual Relief

Florida's Residential Landlord Tenant Act provides that Defendant is permitted to file an action for damages against Class members it alleges owes monies *after* Defendant returns the unlawfully retained security deposits. Fla. Stat. § 83.49(3).

Accordingly, in exchange for Plaintiff and Class members releasing all claims against Defendant, its related entities, and owners of the subject properties (as set forth in the Settlement Agreement and referred to therein as BH Entities), Defendant and those entities have agreed to release and forego the collection of any amounts refunded or any debt waived pursuant to the Settlement Agreement provisions related to alleged damage or other fees in connection with Plaintiff's and Class members' leasing an apartment unit from Defendant or its related entities. The Plaintiff and the Class will therefore receive non-monetary benefits with a total value of $419,178.47 under the Settlement Agreement.

### d.    Opt-Out Provisions

The Settlement allows tenants to opt out of the Settlement and the Settlement Class. Any Settlement Class member who wishes to seek exclusion from the Settlement Class will be advised of his or her right to be excluded, and of the deadline and procedures for exercising that right.  The timetable proposed by the Settlement will afford members of the Settlement Class approximately 30 days within which to decide whether to remain in the Settlement Class, or to seek exclusion from it in writing. Those who wish to pursue individual claims for damages can do so by opting out in writing to the Claims Administrator. [3]

---

[3] The Parties initially agreed that BH Management would self-administer (*see* Settlement Agreement, p. 6.); however, since then, the Parties agreed that American Legal Claim Services, LLC would serve as the administrator.

### e.    Mutual Release

In exchange for the relief described above, and upon entry by the Court of a Final Order and Judgment approving the Settlement, Plaintiff and the Settlement Class will release BH Management from, among other things, all claims related to their security deposit deductions and Defendant will release the Settlement Class for the debts related to the monies that will be returned. Settlement Agreement, p. 4. In other words, the Settlement contemplates a release specific to the subject matter addressed in this Action and does not contemplate a general release of any and all claims of any kind against BH Management.  The Settlement does not include any personal injury or property damage claims.  Thus, it is narrowly tailored to address the common issues raised by the allegations in the operative Complaint and is not an excessively broad general release of the type criticized in other class action settlements.

### f.    Class Representative Award

Under the Settlement, Class Counsel have reserved the right to seek a reasonable Service Award for the named Plaintiff not to exceed $10,000.00 for his service as the named representative of the Settlement Class. Any Service Award approved by the Court will be paid from the Settlement Amount and would not reduce any Class member's benefits and would be in addition to any relief the named Plaintiff may receive as a member of the Settlement Class.

The Service Award is intended to recognize the time and effort expended by the Class Representative on behalf of the Settlement Class in assisting Class Counsel with the prosecution of this case and negotiating the relief the Settlement proposes to confer

to the Settlement Class members, as well as the exposure and risk Plaintiff incurred by participating in and taking a leadership role in this Action.  Here, Plaintiff attended three mediation sessions, sat for a deposition, and dutifully complied with all written discovery obligations. As this Court held in *Venerus v. Avis Budget Car Rental, LLC*, claims that arise under state law permit class representative awards. 674 F. Supp. 3d 1107, 1110 (M.D Fla. 2023) (citing *Altamonte Springs Imaging, L.C. v. State Farm Mut. Auto. Ins. Co.*, 12 So. 3d 850, 857 (Fla. 3d DCA 2009) (approving $10,000 service award to class representative and noting that "[t]he position as fiduciary for the class is less an honor than a headache.").

This settlement is not contingent upon the Court approving the service award.

### g.    Attorneys' Fees and Expenses

Under the Settlement, Defendant has agreed to pay Class Counsel $396,148.34 in attorneys' fees and $21,000 in litigation costs. The Attorneys' Fees and Expenses provision was separately and independently negotiated by the Parties apart from the class settlement provisions, in an arm's-length negotiation overseen by Lance Harke, acting as mediator.  The Declaration of Brian Warwick is attached as **Exhibit 3**.

This case has been intensely litigated including extensive electronic discovery, informal resolution of more than a dozen discovery disputes without Court intervention, extensive briefing on novel claims, and multiple rounds of dispute resolution. The Attorneys' Fees and Expenses are further detailed below in IV(B)(3)(c).

10

### h.    Notice and Administration

BH Management has agreed to pay the cost of having a third-party perform skip tracing for the most recent address of each Class Member. Thereafter, American Legal Claim Services, LLC will administer the notice and the issuance of checks. A copy of the Proposed Notice is attached as **Exhibit 2**.

## V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

Rule 23 was amended in 2018 with regard to how class action settlements are to be approved by the District Court.  The modified Rule 23(e) states:

> (e**) Settlement, Voluntary Dismissal, or Compromise**. The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> > (1) **Notice to the Class**.
> >
> > > (A) Information That Parties Must Provide to the Court. The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
> > >
> > > (B) Grounds for a Decision to Give Notice. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:
> > >
> > > > (i) approve the proposal under Rule 23(e)(2); and
> > > >
> > > > (ii) certify the class for purposes of judgment on the proposal.
> >
> > (2) **Approval of the Proposal**. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

11

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;
(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

The Advisory Committee Notes that accompany the 2018 modifications explain that the amendments to Rule 23 were intended to focus the Court on the fairness of the settlement and class certification at the preliminary approval stage and *before* notice is issued to the class. The concern was that notice should not be issued and those resources spent if the Court is not "likely" to find the settlement to be fair and that the case can be certified. The modified process is explained by the Advisory Committee as follows:

**Subdivision (e)(1).** The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object. The parties must provide the court with information sufficient to determine whether notice should be sent. At the time they seek notice

12

to the class, the proponents of the settlement should
ordinarily provide the court with all available materials they
intend to submit to support approval under Rule 23(e)(2)
and that they intend to make available to class members.
The amended rule also specifies the standard the court
should use in deciding whether to send notice--that it likely
will be able both to approve the settlement proposal under
Rule 23(e)(2) and, if it has not previously certified a class,
to certify the class for purposes of judgment on the proposal.
The subjects to be addressed depend on the specifics of the
particular class action and proposed settlement.  But some
general observations can be made.

One key element is class certification.  If the court has
already certified a class, the only information ordinarily
necessary is whether the proposed settlement calls for any
change in the class certified, or of the claims, defenses, or
issues regarding which certification was granted.  But if a
class has not been certified, the parties must ensure that the
court has a basis for concluding that it likely will be able,
after the final hearing, to certify the class.  Although the
standards for certification differ for settlement and litigation
purposes, the court cannot make the decision regarding the
prospects for certification without a suitable basis in the
record.  The ultimate decision to certify the class for
purposes of settlement cannot be made until the hearing on
final approval of the proposed settlement.  If the settlement
is not approved, the parties' positions regarding certification
for settlement should not be considered if certification is
later sought for purposes of litigation.

Rule 23. Class Actions, FRCP Rule 23 (Advisory Committee Notes to 2018

Amendments).

Thus, under the revised Rule 23(e), the proponents of the Settlement must

present the Court with sufficient information to determine that it will likely be able to:

(1) certify the class for settlement purposes; and (2) approve the proposed settlement

as fair, adequate and reasonable. Fed. R. Civ. P. 23(e). Plaintiffs will address each in turn.

As a preliminary matter, and as extensively briefed in the record, Defendant strongly disagrees that the case is suitable for certification of a contested class, or litigation on a class-wide basis. However, for purposes of this settlement only, Defendant has agreed to certification of the two settlement classes discussed herein, and is not contesting Plaintiff's arguments in this preliminary approval motion.

### A. The Proposed Settlement Classes Satisfy the Certification Requirements of Rule 23.

In order for a class to be certified, the four requirements of Rule 23(a) of the Federal Rules of Civil Procedure must be satisfied. *Amchem Prods. v. Windsor*, 521 U.S. 591 (1997). The trial court has "broad discretion" in deciding whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1669 (11th Cir. 1992).

In addition to satisfying the four requirements under Rule 23(a), "a plaintiff must also establish that the proposed class satisfies at least one of the three requirements listed in Rule 23(b)." *Little v. T–Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). Rule 23(b)(3) requires that the "questions of law or fact common to class members predominate over any questions affecting only individual members." Under Rule 23(b)(3), "[t]he court's inquiry is typically focused on 'whether there are common liability issues which may be resolved efficiently on a class-wide basis.'" *Drossin v. Nat'l Action Financial Services, Inc.*, 255 F.R.D. 608, 613 (S.D. Fla. 2009) (internal citations omitted). "Under Rule 23(b)(3), it is not necessary that all questions

14

of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314,1324 (11th Cir. 2008), quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004).

While all the elements of Rule 23(a) and (b) must be met, it is commonly understood, that the predominance inquiry is the most rigorous. Thus, Plaintiffs will address the predominance requirement of Rule 23(b)(3) first, because it allows for a thorough analysis of the claims that are asserted and the common questions that predominate over any individual issues that may exist in the proposed settlement class. After addressing predominance, Plaintiffs will address the other elements of Rule 23.

### 1.    Rule 23(b)(3) Predominance

To determine whether common questions predominate, the first step is to examine Plaintiff's claims and whether such claims can be decided on common evidence. As set forth above, each Class Member received a substantially similar move out statement that, Plaintiff alleges: (1) did not include the FRLTA notice language via certified mail; and, as a result, (2) did not provide each Class member with the opportunity to object to Defendant's claim against their security deposit. While the Parties do not agree as to the Plaintiff's claims, for the purposes of this settlement, the Parties agree that common questions predominate over any individual issues that may exist. Accordingly, Plaintiff asserts that he has met their burden on the predominance prong of Rule 23(b)(3).

This case is not the first FRLTA security deposit class action. There have been three state court settlement classes involving the same claims advanced in this litigation. *See Brown v. Lohman Property Management, et. al.*, Case No. 16-2018-CA-008274, Duval County, Florida; *Piazza v. Momentum Property Management, LLC*, Case No. 23-CA-000988, Hillsborough County, Florida; *Wolfe v. S2 Mathews, LP*, Case. No. 16-2022-CA-001434, Duval County, Florida.

Because the allegations of Defendant's violations of Florida law derive from the same template document, *i.e.*, the moveout statement, the claims of the Plaintiff and the Class here arise out of the same nucleus of operative facts, and questions common to Plaintiff and the putative Class members predominate in this matter, for purposes of certifying the two settlement classes described herein.

### 2.    Rule 23(a)(1)–Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of the members is impracticable"; however, impracticable does not mean impossible. *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). "The Court is given discretion to make assumptions when determining the numerosity of a class." *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 696 (S.D. Fla. 2004). The court may "make common sense assumptions in order to find support for numerosity." *Drossin,* 255 F.R.D. 615 (internal citations omitted). "[A] class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982).

"When the class is large, numbers alone are dispositive…" *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). Where the class numbers 25 or more, joinder is usually impracticable. *Armstead v. Pingree*, 629 F. Supp. 273, 279 (M.D. Fla. 1986). "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate…" *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal citations omitted). "The focus of the numerosity inquiry is not whether the number of proposed class members are 'too few' to satisfy the Rule, but 'whether joinder of proposed class members is impractical.'" *Agan,* 222 F.R.D. at 696 (internal citations omitted). "While the size of the proposed class is highly relevant to the court's determination of numerosity, courts must also consider factors such as 'the geographic diversity of the class members, the nature of the action, the size of each plaintiff's claim, judicial economy and the inconvenience of trying individual lawsuits, and the ability of the individual class members to institute individual lawsuits.'" *Id*.

Here, there are 6,034 Class Members. This number—combined with the nature of the action and low value of each individual claim — easily and indisputably satisfies the numerosity requirement under Rule 23(a)(1) for certifying this matter as a class action, for purposes of certifying the two settlement classes described herein.

### 3.    Rule 23(a)(2) – Commonality

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that there be a common question of law or fact. Not all factual or legal questions raised in the litigation need to be common so long as at least one issue is common to all class

17

members. *Armstead*, 629 F. Supp. at 280; *Pottingar v. Miami*, 720 F. Supp. 955, 958

(S.D. Fla. 1989). "A sufficient nexus is established if the claims or defenses of the class

and the class representative arise from the same event or pattern or practice and are

based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332,

1337 (11th Cir. 1984). Commonality of claims "requires that there be at least one issue

whose resolution will affect all or a significant number of the putative class members."

*Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal citations

omitted).

Courts have held that a "common nucleus of operative facts" is typically

sufficient to meet the commonality requirement Rule 23(a)(2). *Keele v. Wexler*, 149 F.3d

589, 594 (7th Cir. 1998). "Common nuclei of fact are typically manifest where … the

defendants have engaged in standardized conduct towards members of the proposed

class by mailing to them allegedly illegal form letters or documents." *Id.* "Where the

complaint alleges that the Defendants have engaged in a standardized course of

conduct that affects all class members, the commonality requirement will generally be

met." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 685 (S.D. Fla. 2004). "[I]t is not

just the presence of common questions that matters, but the ability of the class action

device to 'resolve an issue that is central to the validity of each one of the claims in one

stroke.'" *Manno v. Healthcare Revenue Recovery Group, LLC*, 289 F.R.D. 674, 685 (S.D.

Fla. 2013), quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

As explained in detail under the predominance inquiry, each Class member's

claim turns on whether they received a notification containing the FRLTA language

18

from the Defendant. The 6,034 Class Members received substantially similar move out statements. Thus, the overriding common question in this action is whether there was a violation of the FRTLA by virtue of receiving that move out statement.

Because each of the putative class members' claim depends on the same common legal question — whether there was a violation of the FRLTA — the commonality requirement of Rule 23(a)(2) is also satisfied for purposes of certifying the two settlement classes described herein.

### 4.    Rule 23(a)(3) –Typicality

Rule 23(a)(3) of the Federal Rules of Civil Procedure requires that the claims of the named plaintiff be typical of the claims of the class. A claim is typical if it arises from the same practice that gives rise to the claims of other class members and the claims are based on the same legal theory. *Kornberg*, 741 F.2d at 1337.

Here, the named Plaintiff received the security deposit notice using a substantially similar moveout statement template as the rest of the Class. All the claims focus on that move out statement.  As a result, the claims of the named Plaintiff are typical of the claims of the class members he seeks to represent, for purposes of certifying the two settlement classes described herein.

### 5.    Rule 23(a)(4)–Adequacy of Representation

Rule 23(a)(4) of the Federal Rules of Civil Procedure also requires that a named plaintiff provide fair and adequate protection of the interests of the class. "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the

class; and (2) whether the representatives will adequately prosecute the action." *Busby*,
513 F.3d at 1323 (internal citations omitted).

Generally, a class representative must have a "working knowledge of the case";
however, "the threshold of knowledge required to qualify a class representative is
low." *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667, 675 (S.D. Fla. 2012)
(cleaned up). "It is well-settled that it is not necessary for named class representatives
to be knowledgeable, intelligent or have a firm understanding of the legal or factual
basis on which the case rests in order to maintain a class action." *Powers v. Gov't
Employees Ins. Co.*, 192 F.R.D. 313, 317–318 (S.D. Fla.1998).

For the purposes of certifying the two settlement classes described herein, the
named Plaintiff in this matter has no interests antagonistic to the class that he seeks to
represent. Plaintiff has participated fully in discovery, depositions, mediation, and
settlement. From the inception of this case, Plaintiff has been focused on ending the
withholding of security deposits in a manner he alleges is illegal.

The Plaintiffs have also met their burden by retaining counsel experienced in
class action litigation.  Class counsel will be deemed adequate if they are shown to be
qualified, adequately financed, and possess sufficient experience in the subject matter
of the class action. *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651
(S.D. Fla. 2010).

Class Counsel has been appointed lead and class counsel in over 75 class actions
in state and federal court. (**Exhibit 3**, Decl. of B. Warwick). Based on the above, the

requirements of Rule 23(a)(4) have been satisfied, for the purpose of certifying the two settlement classes described herein.

The named Plaintiff should be appointed as the class representatives. And, Pursuant to Rule 23(g), the parties request that the Court appoint Plaintiff's counsel to act as Class Counsel.

### 6.    Rule 23(b)(3)–Class Action is Superior to Other Available Methods to Resolve This Controversy.

The superiority issue is concerned with whether a "class action is superior to other available methods for the fair and efficient adjudication of the [controversy]." *Busby*, 513 F.3d at 1326. Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. "[T]he class action procedure allows for the efficient and economical litigation of a question potentially affecting every class member." *Kelly v. Sabretech Inc.*, 195 F.R.D. 48, 51 (S.D. Fla. 1999).

The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992). It is proper for a court, in deciding the "best" available method to resolve the controversy, to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). As one court put it, "the proposed class members' claims are based on a common set

of facts and concern the same allegedly deceptive practices. [B]ecause this controversy involves many common questions of law and fact, a class action will be superior to other available methods for fairly and efficiently adjudicating this controversy." *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 671 (S.D. Fla. 2014). In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiff. *See Hicks v. Client Servs.*, 257 F.R.D. 699, 700 (S.D. Fla. 2009).

In this case, if 6,034 individuals had to file their own separate lawsuits and obtain counsel for claims that individually total hundreds of dollars, at most, it would be an inefficient use of court resources and may result in many Class Members not pursuing these claims at all.

Accordingly, for the purposes of certifying the two settlement classes described herein, the predominance and superiority elements of Rule 23(b)(3) have been met. Where all of the necessary elements of Rule 23(b) have been established, certification of the class is appropriate, and the Court should so order.

## B. The Proposed Settlement Is Fair, Adequate and Reasonable

As discussed above, the second issue for the Court to determine under amended Rule 23(e) is whether the Court is "likely" to approve the settlement as fair, adequate and reasonable. There are four factors listed in Rule 23(e)(3) which are to be considered when examining the fairness of a proposed settlement: (A) the class representatives and class counsel have adequately represented the class; (B) the

proposal was negotiated at arm's length; (C) the relief provided for the class is adequate; and (D) the proposal treats class members equitably relative to each other. The proposed Settlement satisfies each component easily.

### 1.    The Class Representatives and Class Counsel Have Adequately Represented the Class

There were several challenges in this case that showcase the commitment of the named Plaintiff and skill of Class Counsel.  First, through discovery, Class Counsel discovered that the case was much larger than was initially believed.  Through depositions, analysis of financial records, and investigation, Class Counsel discovered that some 80 additional apartment complexes that were not identified in Defendant's initial discovery production. The named Plaintiff participated in three separate full day mediations, totaling nearly 30 combined hours of negotiation.

This certainly was not a class action that was settled prematurely and without discovery of the true facts.  As a result, Plaintiff and Class Counsel have adequately represented the Class in this matter.

### 2.    The Proposed Settlement Was Negotiated at Arm's Length

To warrant preliminary approval, the terms of a class action settlement should reveal that it is "the product of serious, informed, non-collusive negotiations." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D. NY 1997).  In making this determination, courts begin with a presumption of good faith in the negotiating process. *See Lee v. Ocwen Loan Serv., LLC*, No. 14-cv-60649, 2015 WL 5449813, at*11 (S.D. Fla. Sept. 14, 2015) ("Where the parties have negotiated at arm's

length, the Court should find that the settlement is not the product of collusion."); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) ("There is a presumption of good faith in the negotiation process.").[4]

The Parties here were separately represented by capable counsel experienced in complex actions and consumer litigation who negotiated at arm's length. Accordingly, "a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel." MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42. The Parties' settlement negotiations were protracted, requiring three separate mediation sessions and breaking down entirely on at least two occasions. Critically, settlement discussions did not begin until after (1) extensive document production; (2) numerous discovery documentation letters followed by several meet and confer conferences on allegedly missing and inaccurate data; and (3) depositions of fact witnesses and corporate representatives of the Defendant.

Thus, the Parties were not "groping in the darkness" during their negotiations, *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977), and the Settlement was certainly not "the product of uneducated guesswork." *In re Corrugated Container Antitrust Litig.*,

---

[4] Accord *Mees v. Skreened, Ltd.*, No. 14-cv-142, 2016 WL 67521, at *2 (S.D. Ohio Jan. 6, 2016) ("Absent evidence to the contrary, courts presume that a class settlement is the result of arm's length negotiations and is not the product of fraud or collusion."); Archbold v. Wells Fargo Bank, N.A., No. 13-cv-24599, 2015 WL 4276295, at *2 (S.D. W. Va. July 14, 2015) (same); *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("[T]he courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement:").

643 F.2d 195, 211 (5th Cir. 1981); *accord Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,

965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length,

non-collusive, negotiated resolution").

On top of that, the Parties' negotiations occurred within the context of formal

mediation conducted by Lance Harkey of Upchurch Watson White & Max.   The

participation of such a respected neutral in the settlement negotiation process should

give the Court "confidence that [the negotiations] were conducted in an arm's-length,

non-collusive manner."   *In re AMF Bowling*, 334 F. Supp. 2d 462, 465 (S.D.N.Y.

2004).[5]

As a result, this second factor also weighs in favor of granting preliminary

approval to the proposed settlement.

### 3.    The Relief Provided to the Class is Adequate

To grant preliminary approval, the Court must determine that it is "likely" to

approve the settlement.   In other words, this Court should determine whether the

proposed Settlement falls within the range of possible final approval. MANUAL FOR

COMPLEX LITIGATION (FOURTH) 21.632 at 320-21; *accord Lazy Oil Co. v. Wotoco Corp.*,

95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd.*, 166 F.3d 581 (3d Cir. 1999) (in

considering a class settlement, the proper inquiry is "whether the recovery falls within

th[e] range of reasonableness, not whether it is the most favorable possible result of

---

[5] *See also Faught v. Am. Home Shield Corp.*, No. 07-cv-1928, 2010 WL 10959223, at *21 (N.D. Ala. Apr.
27, 2010) (fact that "negotiations were supervised by a highly experienced mediator" evidenced arms-
length nature of class settlement), *aff'd.*, 688 F.3d 1233 (11th Cir. 2011).

litigation") (citation omitted). The range of approval "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972); *see also In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981) ("[T]he essence of a settlement is compromise. A just result is often no more than an arbitrary point between competing notions of reasonableness.").

Thus, "[i]t is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable." *Shy v. Navistar Int'l Corp.*, No. 92-cv-333, 1993 WL 1318607, at *2 (S.D. Ohio May 27, 1993) (citation omitted). The Court need simply "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation," because it is "proper to take the bird in hand instead of a prospective flock in the bush." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Accordingly, the relevant inquiry is "whether the recovery falls within that range of reasonableness, [and] not whether it is the most favorable possible result of litigation." *Lazy Oil Co.*, 95 F. Supp. 2d at 338.

Plaintiff had three goals at the outset of the litigation: (1) to determine whether Defendant failed to comply with the FRLTA; (2) to recover refunds of monies withheld where appropriate; and (3) to secure a mutual release that would ensure the Class and Defendant did not end up in subsequent litigation. This settlement achieves

all three of these goals. In addition, in this Settlement, Plaintiff secures a waiver of debt obligations in three times the amount of cash relief for the Security Deposit Balance Class. This Settlement provides mutual relief and balance debt relief that may not even be available at trial. This settlement is a win- win.

Rule 23(e)(2)(c) provides four additional considerations that must be taken into account when determining whether the relief being provided under the Settlement is adequate: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Each factor supports approval.

### a. The costs, risks, and delay of trial and appeal

The proposed settlement accomplishes two critical achievements when compared to continued litigation. First, upon preliminary approval, it returns monies that were withheld back to the Class Members. This is the primary goal of the litigation. Second, it includes a waiver of Defendant's right to pursue those monies after returning them.

Absent this settlement, discovery would continue. There are several motions pending including dispositive motions and class certification, the outcome of which was not a foregone conclusion. Once class certification is decided, it will likely result in a Rule 23(f) interlocutory appeal, regardless of the outcome. Such an appeal could delay any trial of the case for more than a year. Thereafter, trial would ensue and

upon final judgment another appeal could result. Realistically, no judgment would be final in this case in less than three years and could be as long as five years considering the likelihood of multiple appeals. As a result, this settlement is greatly beneficial to the class as it circumvents such long delays and immediately helps alleviate a real danger.

When it comes to risk, this settlement also provides substantial benefits to Plaintiff and the Class. While Plaintiff is confident in his claims, Defendant is equally confident in its defenses. This settlement eliminates the risk to both the Plaintiff and the Defendant in this litigation, as no class member will have to prove violation of the FRLTA, and Defendant is obtaining a full release. This settlement also avoids the risk and burden of subsequent litigation between Plaintiff, the Class, and the Defendant.

Class certification and a potential appeal of any Rule 23 determination also contains a substantial level of risk.

When these factors are taken into consideration, the proposed Settlement provides substantial benefits in comparison to any litigation alternative. This factor therefore weighs heavily in favor of approval of this Settlement Agreement.

**b. The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims**

The proposed relief to the Class takes three factors into consideration. First, Defendant may have the legal right to pursue the amounts returned. Second, Plaintiff may be legally entitled to a return of the full amount withheld. Third, it is in the Class members' and the Defendant's best interest to avoid future litigation. Considering each

28

of these factors, the claim procedure set forth in the Settlement should be approved by this Court as fair and reasonable.

### c. The terms of any proposed award of attorney's fees, including timing of payment

When a representative party has conferred a substantial benefit upon a class, class counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *In re Checking Account Overdraft Litigation*, 830 F.Supp.2d 1330, 1358 (S.D.Fla.,2011) (citing *Camden I Condominium Assn. v. Dunkle*, 946 F.2d 768, 771 (11th Cir.1991) ("Attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.")). Common-fund cases are consistent with the so-called American Rule, because the attorney's fees come from the fund, which belongs to the class. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253, 130 S.Ct. 2149, 176 L.Ed.2d 998 (2010) ("Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise.").

Courts will often classify the fee arrangement as a "constructive common fund" that is governed by common-fund principles even when the agreement states that fees will be paid separately. *In re Home Depot Inc.*, 931 F.3d 1065, 1080 (11th Cir. 2019) (citing *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1072 (S.D. Tex. 2012)

29

(providing an overview of the constructive common-fund doctrine)). Thus, the "common fund" analysis can be appropriate even where the fee award is to be paid separately by Defendants. *See David v. American Suzuki Motor Corp.*, 2010 WL 1628362 at *8 n. 14 (S.D.Fla. April 15, 2010) (citing *Duhaime v. John Hancock Mut. Life–Ins. Co.*, 183 F.3d 1, 4 (1st Cir.1999)).

"Several courts have embraced the constructive common fund approach, warning that 'private agreements to structure artificially separate fee and settlement arrangements' should not enable parties to circumvent the 25% benchmark requirement on 'what is in economic reality a common fund situation.'" *Bluetooth Headset*, 654 F.3d 935, 943 (9th Cir. 2011) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 821 (3d Cir.1995). Courts recognize this approach even if they do not use the common-fund label. For example, in *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir.1996), the Eighth Circuit stated:

> The district court concluded that because the attorney fees were to be paid by the defendants separate and apart from the settlement funds, the fees did not come from a "common fund" belonging to the plaintiffs, and thus the percentage of the benefit approach was inappropriate. We disagree. Although under the terms of each settlement agreement, attorney fees technically derive from the defendant rather than out of the class' recovery, in essence the entire settlement amount comes from the same source. The award to the class and the agreement on attorney fees represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery.

*Johnston*, 83 F.3d at 245–46 (citing *In re Gen. Motors*, *supra*).

As the Eleventh Circuit explained, the rationale for the constructive common fund is that the defendant negotiated the payment to the class and the payment to

counsel as a "package deal."[6] *In re Home Depot Inc.*, 931 F.3d at 1080 (citing *In re
Heartland Payment Sys., Inc.*, 851 F. Supp. 2d at 1072 (quoting *Johnston v. Comerica
Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996)). The defendant is concerned, first and
foremost, with its total liability. *In re Home Depot Inc.*, 931 F.3d at 1080 (citing *In re
Gen. Motors Corp.*, 55 F.3d 768, 819–20 (3d Cir. 1995)). Thus, courts have recognized
that, as a practical matter, defendants undoubtedly take into account the amount of
attorney's fees when they agree on an amount to pay the class. *See id.; see also Brytus v.
Spang & Co.*, 203 F.3d 238, 246 (3d Cir. 2000) ("[C]onsideration of the attorney's fees
was likely factored into the amount of settlement."). By taking the amount of
attorney's fees into account, the defendant effectively reduces the class's recovery
accordingly. Commentators have endorsed this reasoning:

> It is fair to assume that the class members' recoveries have been indirectly
> reduced already in that the settling defendant, in agreeing to pay the class,
> say, $8 million and class counsel an additional $2 million, is effectively
> agreeing to pay the class $10 million and to not contest class counsel's
> pursuit of a 20% fee from the $10 million recovery.

*In re Home Depot Inc.*, 931 F.3d at 1080 (citing 5 William B. Rubenstein, Newberg on
Class Actions § 15:76, p. 267 n.7 (5th ed. 2015)); *see also* Manual for Complex
Litigation (Fourth) § 21.7 (2004) ("If an agreement is reached on the amount of a

---

[6] Although the Eleventh Circuit found the appropriate measure of fees in *In re Home
Depot* to be the lodestar approach, that was based on the fact that the parties had not
negotiated the attorneys' fees other than to agree that Home Depot would pay them
and the district court would determine what that attorneys' fee award should be.  By
contrast, in this case, the parties negotiated and settled on an amount for the attorneys'
fee award.  Accordingly, the Eleventh Circuit's explanation regarding the constructive
common fund approach as a measure of fees in *In re Home Depot* applies directly here
despite the court ultimately ruling that the lodestar analysis was required.

settlement fund and a separate amount for attorney fees and expenses, ... the sum of
the two amounts ordinarily should be treated as a settlement fund for the benefit of the
class, with the agreed-on fee amount constituting the upper limit on the fees that can
be awarded to counsel.").  Accordingly, the attorneys' fees in a class action can be
determined based upon the total settlement fund, including a separate amount for
attorneys' fees and expenses, and not just the actual payout to the class. *See Waters v.
Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir.1999); *see also*, *Poertner v.
Gillette Co.*, 618 Fed. Appx. 624, 628-29 (11th Cir. 2015) (holding that non-monetary
relief can be included in calculation of common fund).

    In other words, in constructive common-fund cases, the parties may designate
the attorney's fees to be paid separately, but at the same time they agree on the amount
of attorney's fees or at least set a cap on the amount. Courts, of course, are not bound
by the parties' agreement on fees. *In re Home Depot, supra* (citing *Waters v. Int'l Precious
Metals Corp.*, 190 F.3d 1291, 1296 n.9 (11th Cir. 1999)).  The agreed-upon fees, or the
agreed-upon cap, might be better thought of as the expected attorney's fees. Courts
have included the expected attorney's fees in the class benefit, reasoning that the
payment to the class and the payment to counsel were negotiated as a package deal,
so that the defendant reduced the payment to the class to account for the expected
payment to counsel. *In re Home Depot, supra* (citing *In re Sw. Airlines Voucher Litig.*, 898
F.3d 740, 745 (7th Cir. 2018) ("Fee awards for class counsel are part of a constructive
common fund because they are a benefit to the class.")). In mathematical terms, the
equation for the percentage method in constructive common-fund cases effectively

works like this: the actual payment to counsel is the product of (1) the percentage the court decides to award, and (2) the payment to the class plus the expected payment to counsel (together, the class benefit). *In re Home Depot Inc.*, 931 F.3d at 1092.

In this case, the constructive common fund should therefore be considered to be the combination of the amount of monies refunded to the Class members of $572,851.00, the non-monetary benefit of the $419,178.47 released in Defendant's potential claims against the Security Deposit Balance Class members, the agreed upon and therefore expected Attorney's Fee based on arms-length negotiation of $396,148.34, and litigation costs of $21,000. Therefore, the payment to the class, the non-monetary benefit to the class, the expected payment to counsel and the expected expenses together totals $1,409,178.47.[7]  The typical common fund fee awarded is between 20% and 30% of the fund. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d at 775.  Thirty percent of the settlement "pie" here amounts to $422,753. 41 and twenty percent of the settlement "pie" amounts to $281,835.69.   Here, Class Counsel's expected attorney fee amounts to 28% of the constructive common fund.  This is well within the range of typical common fund fees.

The Parties negotiated in a good faith manner to arrive at the attorney's fees and expenses proposed in the Settlement for Class Counsel.  While this Court is not bound by the Parties' agreement, the Settlement Agreement is entitled to great weight

---

[7] Following execution of the settlement agreement, but just before submitting preliminary approval, the Defendant opted to utilize a claims administrator at a cost of approximately $27,000. This amount is being paid above the current class relief and is technically a part of the constructive common fund.

because it resulted from arm's length negotiations after the merits of the benefits available to Class members were already agreed. Warwick Decl. at ¶ 14; *see also, e.g., Strube v. Am. Equity Inv. Life Ins. Co.*, 2006 WL 1232816, at *2 (M.D. Fla. May 5, 2006); *Elkins v. Equitable Life Ins. Co.*, 1998 WL 133741, at *34 (M.D. Fla. Jan. 27, 1998). Where the amount for attorneys' fees and costs is reached by agreement— and where the amount awarded is to be paid separately by the defendant and does not impact the amount recoverable by Class members—the focus of a court's analysis should not be on the amount, but on ensuring that whatever amount was agreed to did not result from any collusion between the parties. *Strube v. Am. Equity Inv. Life Ins. Co.*, 2006 WL 1232816, at *2.   Absent any concern regarding collusion, great weight should be afforded to the parties' agreement. This is largely for two reasons. First, because the benefits for the class are already decided and will not be impacted by the fee amount, class counsel is incentivized to maximize fees while the defendant can "bargain for lower fees using the risk of delay and the potential conflict of interest which could [arise] if counsel delay[s] settlement for a higher fee." *Strube, supra*. And second, because fees are paid separately and not from the available class benefits, the defendant is incentivized to pay as low a fee as possible. *See Elkins*, 1998 WL 133741, at *34 (because defendant was paying fees "separate and apart from any recovery to the Class, [the defendant] had a particular incentive to bargain strenuously to keep the fee as low as possible."). Such principles are at work here: The Parties agreed on all substantive terms prior to negotiating any attorneys' fees and costs, and Defendant is paying all fees and costs separately from the benefits available to Class members.

Warwick Decl. at ¶ 14; *see also, e.g.,* McLaughlin on Class Actions § 6:7 (12th ed.) ("A settlement reached after a supervised mediation" strongly suggests there was no collusion).

Prior to Final Approval of this Settlement, Class Counsel will submit its Motion for Attorneys' Fees and Costs to this Court, wherein Class Counsel will more fully detail the basis for its expected Attorneys' Fee award.

### d. Any agreement required to be identified under Rule 23(e)(3)

Rule 23(e)(3) reads:

> (3) Identifying Agreements.  The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

It is widely understood that this section seeks disclosure to the Court of any and all side agreements to details that may not be set clearly forth in the settlement agreement.  The parties have, through hard-fought negotiations, included all details within the Settlement Agreement and supporting documents.  There are no additional agreements to be identified.

### 4. The proposal treats class members equitably relative to one another

The final fairness factor to be considered under amended Rule 23(e)(2) asks whether the proposed settlement treats class members equitably relative to one another.  For settlements which provide tiered damages, such an analysis would be relevant and appropriate.  Here, there is a tiered approach. The Security Deposit Balance class still has an outstanding balance owed to the Defendant. In order to

achieve a true mutual walk away and release of claims, the sum to be returned is first applied to the outstanding balance. Only if the balance is eliminated will the Security Deposit Balance Class Member receive a proportionate cash refund.

Moreover, the proposed Settlement does not provide preferential treatment to the named Plaintiff — instead, his recovery is limited to that obtainable by other Settlement Class Members The service award is separate from class relief and is designed to compensate Class Representatives for their time, effort, and inconvenience in connection with acting as the class representative in this case. See *Camp v. City of Pelham*, No. 10-cv-01270, 2014 WL 1764919, at *6 (N.D. Ala. May 1, 2014) ("[t]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action"); *Warren v. Cook Sales, Inc.*, No. 15-cv-0603, 2017 WL 325829, at *8 (S.D. Ala. Jan. 23, 2017) (service award of $5,000 "fair and reasonable"). *Cf.* 2 JOSEPH M. MCLAUGHLIN, MCLAUGHLIN ON CLASS ACTIONS: LAW AND PRACTICE § 6:28 at 197 (10th ed. 2013) ("[T]here is near-universal recognition that it is appropriate for the court to approve an incentive award payable from the class recovery, usually within the range of $1,000-$20,000.").

Because there is no there is a limited and reasonable distinction between the There are 6,034 Class Members, this final factor also weighs in favor of this Court finding that the proposed settlement is fair, adequate and reasonable, such that the Court is "likely to approve the proposal under Rule 23(e)(2)."

## VI.    THE COURT SHOULD APPROVE THE PROPOSED FORM AND METHOD OF NOTICE TO THE CLASS MEMBERS

The Court should also approve the Parties' plan for disseminating notice to the members of the Settlement Class.  "The analysis for purposes of due process is on the notice plan itself, and actual receipt of notice by each individual class member is not required." *Adams v. S. Farm Bureau Life Ins. Co.*, 417 F. Supp. 2d 1373, 1380, n.6 (M.D. Ga. 2006), *aff'd.*, 493 F.3d 1276 (11th Cir. 2007); *see also Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012) ("Courts have consistently recognized that, even in Rule 23(b)(3) class actions, due process does not require that class members actually receive notice.").

The threshold inquiry concerning the sufficiency of class notice is whether the notice is reasonably calculated to apprise the class of the pendency of the action, of the terms of the proposed settlement, and of the class members' rights to opt out or object. *Eisen v. Carlisle & Jaqueline*, 417 U.S. 156, 173-74 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  Notice of a class settlement ensures that the due process rights of class members are protected.  *See, e.g.*, *Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176-77 (5th Cir. 1975).  Accordingly, a court should ensure that "the best notice that is practicable under the circumstances" is disseminated "in a reasonable manner to all class members who would be bound by the proposal," including through "individual notice to all [class] members who can be identified through reasonable effort."  FED. R. CIV. P. 23(c)(2)(B), (e)(1).

The Court is vested with considerable discretion in fashioning notice—both in

37

terms of the notice's content and manner of distribution. 7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1797.6, at 200 (3d ed. 2005). This is particularly true within the context of a class action settlement. *See, e.g.*, *Handsche v. Special Serv. Div.*, 787 F.2d 828, 833 (2d Cir. 1986); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico*, 910 F. Supp. 2d 891, 913 (E.D. La. 2012), *aff'd.*, 739 F.3d 790 (5th Cir. 2014). Such discretion is limited only by the requirement that the contents of the notice "inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the [settlement fairness] hearing." 2 HERBERT NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS (FOURTH) § 8.32 (2002). As such, the notice need not be unduly specific, or reference every term of the proposed settlement. *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) ("The standard for the adequacy of a settlement notice . . . is measured by reasonableness," and "the notice need not include 'every material fact' or be 'overly detailed,'"); *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."). This is in keeping with the principle that Rule 23(e) notice is bound only by Constitutional Due Process principles, such that the notice need only be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the [settlement proposed] and afford them an opportunity to present their objections." *Mullane*, 339

38

U.S. at 314 (citation omitted).

Here, the Parties have agreed to retain American Legal Claim Services, LLC to administer the settlement after BH Management conducts a third-party skip trace.

For the convenience of potential Class members and the Claims Administrator, the Parties have prepared a suggested form Notice of Opt-Out during the notice process, provided that potential Settlement Class members need not use the suggested form and may opt-out by providing the information required hereby in another form. (**Exhibit 2**, Proposed Notice and Opt-Out Form). At bottom, the proposed notice provides Settlement Class members with sufficient information and time to make an informed and intelligent decision about joining or opting out of the Settlement. The proposed notice satisfies the requirements of Rule 23 and due process. Accordingly, the Court should approve the form and content of the notice proposed by the Settlement.

## VII.  CONCLUSION

Based on all of the foregoing, the proposed Class Representative respectfully requests that the Court: (1) preliminarily approve the Settlement; (2) find that the parties have shown that the Court will likely approve the Settlement Agreement under Federal Rule 23(e)(2) and certify the Settlement Class for purposes of judgment in accordance with the Settlement Agreement, such that giving of notice to all Settlement Class members who would be bound by the Settlement Agreement is justified; (3) approve the proposed plan of notice to the Settlement Class and direct that notice be provided to the Settlement Class in accordance with the Notice Program; (4) set Opt-

Out and Objection Deadlines; (6) preliminarily enjoin all Settlement Class members from commencing, prosecuting, intervening in, or participating as a plaintiff or class member in any action, arbitration, or proceeding in any court, arbitration forum or tribunal asserting any of the Released Claims against any of the Released Parties; (7) stay all proceedings in this civil action except those related to approval and effectuation of the Settlement Agreement; (8) set a schedule for disseminating notice to the Settlement Class Members; and (9) schedule a hearing pursuant to Federal Rule of Civil Procedure 23(e) to finally determine whether the proposed Settlement is fair, reasonable, and adequate, and that the elements for certification under Rule 23(a) and (b) are satisfied.

Dated: January 10, 2025

**VARNELL & WARWICK, P.A.**

/s/ Jeffrey L. Newsome
Jeffrey L. Newsome; FBN: 1018667
Janet R. Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573
Pamela G. Levinson, FBN: 538345
Christopher J. Brochu; FBN: 1013897
400 N Ashley Drive, Suite 1900
Tampa, FL 33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301
*jnewsome@vandwlaw.com*
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*plevinson@vandwlaw.com*
*cbrochu@vandwlaw.com*
*ckoerner@vandwlaw.com*

***Attorneys for Plaintiff, and on behalf of all others similarly situated***

40

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Jeffrey L. Newsome
Jeffrey L. Newsome