# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| **DOUGLAS CHIODINI**, on behalf of himself and all others similarly situated, | |
| **Plaintiff,** | |
| **v.** | **Case No. 6:23-cv-147-CEM-DCI** |
| **BH MANAGEMENT SERVICES, LLC,** | **CLASS ACTION** |
| **Defendant.** | |

### PLAINTIFF'S UNOPPOSED[1] MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, PETITION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE AWARD, AND INCORPORATED MEMORANDUM OF LAW

---

[1] Defendant does not oppose the relief requested but maintains that it acted in compliance with the Florida Residential Landlord and Tenant Act at all times.

## TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................... ii

TABLE OF AUTHORITIES ................................................................. iv

I.     INTRODUCTION ...................................................................... 1

II.    SETTLEMENT OVERVIEW ..................................................... 2

          a.  Monetary Relief ................................................................ 3

          b.  The Unique Risks and Difficulties of the Action ............. 4

          c.  Overwhelming Class Support ........................................... 4

III.   BACKGROUND ......................................................................... 4

IV.    THE SETTLEMENT ................................................................... 6

          a.  The Proposed Settlement Classes ..................................... 6

          b.  Monetary Relief ................................................................ 7

          c.  Non-Monetary Contractual Relief .................................... 9

V.     MOTION FOR FINAL APPROVAL ....................................... 10

          a.  Legal Standard for Final Approval ................................ 10

          b.  The Proposed Settlement Meets the Rule 23(e) Criteria for Final
              Approval ......................................................................... 16

       i.  Adequacy of Representation .................................................. 12

       ii. Settlement Was Negotiated at Arm's ..................................... 13

       iii. Adequacy of the Settlement Relief ........................................ 15

              1.  Settlement Benefits are Outstanding ............................ 15

              2.  Costs, Risks and Delay of Trial and Appeal ................ 16

3.  Effective Method of Distributing Relief and Processing Claims .... 17

4.  Reasonable Terms Relating to Attorneys' Fees............................ 18

5.  Agreements Identified Pursuant to Rule 23(e)(3) .......................... 18

iv.  Equitable Treatment of Settlement Class Members Relative to Each Other Rule 23(e)(2)(D) ......................................................................... 18

v.  The Opinions of Class Counsel, Plaintiff, and Absent Settlement Class Members Favor Approval of the Proposed Settlement .................................. 19

VI.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE . 20

a.  The Settlement Class Satisfies the Rule 23(a) Requirements ......... 20

b.  The Settlement Class Also Satisfies the Rule 23(b)(3) Requirements ................................................................................. 22

VII.  THE NOTICE PROGRAM AND CLAIMS PROCESS SATISFY DUE PROCESS AND RULE 23 ....................................................... 23

VIII.  Attorneys' Fees, Costs, and Class Representative Awards ........................... 24

A.  The Total Relief to Class .................................................. 25

B.  The Requested Fee is Appropriate Under the Percentage Method .......... 26

C.  The Johnson Factors Support the Requested Attorneys' Fees ................ 30

a.  The Time and Labor Required ..................................... 31

b.  The Novelty and Difficulty of the Questions.................................. 31

c.  The Skill Requisite to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys........................ 32

d.  Preclusion of Other Employment .................................................. 33

e.  The Customary Fee.................................................................... 33
f.  Whether the Fee is Fixed or Contingent.......................................... 34

g.  The Amount Involved and the Results Obtained ........................... 34

       h.  Awards in Similar Cases ................................................................... 35

    D. The Court Should Reimburse Class Counsel for Their Costs .............. 35

    E.  Class Representative Award ............................................................... 36

IX.     CONCLUSION ......................................................................................... 39

CERTIFICATE OF CONFERRAL ....................................................................... 41

CERTIFICATE OF SERVICE .............................................................................. 43

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                      <u>Page(s)</u>

*Allapattah Servs., Inc. v. Exxon Corp.*,
  454 F. Supp. 2d 1185 (S.D. Fla. 2006) ......................................................... 34, 37

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................................... 20

*Arkin v. Pressman*,
  38 F.4th 1001 (11th Cir. 2022) ...................................................................... 29

*Ass'n for Disabled Americans v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002) .................................................................... 19

*Behrens v. Wometco Enters., Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ............................................................... 15, 34

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ............................................................ 11, 14, 15

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ................................................................................. 27, 29

*Borcea v. Carnival Corp.*,
  238 F.R.D. 664 (S.D. Fla. 2006) .................................................................... 13

*Burrow v. Forjas Taurus S.A.*,
  No. 16-21606-CIV, 2019 WL 4247284 (S.D. Fla. Sept. 6, 2019) ........................ 14

*Busby v. JRHBW Realty*,
  513 F.3d 1314 (11th Cir. 2008) ...................................................................... 22

*Camden I Condominium Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) ................................................................. Passim

*Chis v. Peerless Indem. Ins. Co.*,
  No. 5:14-cv-277-MTT, 2016 WL 9185305 (M.D. Ga. Nov. 17, 2016) ............ 31, 32

*City of St. Petersburg v. Total Containment, Inc.*,
  265 F.R.D. 630 (S.D. Fla. 2010) .................................................................... 22

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*,
No. 1:04-cv-3066-JEC, 2012 WL 12540344 (N.D. Ga. Oct. 26, 2012)............ 32, 35

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998).............................................................................38

*Cotton v. Hinton*,
559 F.2d 1326 (5th Cir. 1977).................................................................. 15, 16, 31

*Denney v. Jenkens & Gilchrist*,
230 F.R.D. 317, 2005 WL 388562 (S.D.N.Y. Feb.18, 2005) ................................37

*Desue v. 20/20 Eye Care Network, Inc.*,
No. 21-CIV-61275-RAR, 2023 WL 4420348 (S.D. Fla. July 8, 2023).................27

*Ferron v. Kraft Heinz Foods Co.*,
No. 20-CV-62136-RAR, 2021 WL 2940240 (S.D. Fla. July 13, 2021) .................19

*Francisco v. Numismatic Guar. Corp. of Am.*,
No. 06-61677, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ..................................12

*Fresco v. Auto Data Direct, Inc.*,
No. 03–61063–CIV, 2007 WL 2330895 (S.D. Fla. May 14, 2007)........................11

*Gevaerts v. TD Bank*,
No. 11:14-cv-20744-RLR, 2015 WL 6751061 (S.D. Fla. Nov. 5, 2015) ...............32

*Gonzalez v. TCR Sports Broadcasting Holding, LLP*,
No. 1:18-CV-20048-DPG, 2019 WL 2249941 (S.D. Fla. May 24, 2019)..............36

*In re Checking Account Overdraft Lit.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) .......................................................... 15, 35

*In re Checking Account Overdraft Litig.*, No. 1:09-MD-02836-JLK,
2014 WL 11370115 (S.D. Fla. 2014) ...................................................................30

*In re Domestic Air Transp. Antitrust Litig.*,
148 F.R.D. 297 (N.D.Ga.1993)..................................................................... 38, 39

*In re Equifax*,
999 F.3d 1247 (11th Cir. 2021)..................................................................15, 17, 27

*In re Ethicon Physiomesh Flexible Compos. Hernia Mesh Prod. Liab. Litig.*,
No. 1:17-md-02782-RWS, 2022 WL 17687425 (N.D. Ga. Nov. 14, 2022) ..........27

*In re Gould Sec. Litig.*,
727 F. Supp. 1201 (N.D. Ill. 1989) ........................................................................27

*In re Heartland Payment Sys., Inc.*,
851 F. Supp. 2d 1040 (S.D. Tex. 2012) ..................................................................25

*In re Home Depot Inc.*,
931 F.3d 1065 (11th Cir. 2019) .......................................................................25, 28

*In re Johnson & Jonson Aerosol Sunscreen Mktg. Sales Pract. and Prod. Liab. Litig.*,
No. 0:21-md-3015-SINGHAL/Valle, 2023 WL 2284684 (S.D. Fla. May 4, 2023)28

*In re Lease Oil Antitrust Litig.*,
186 F.R.D. 403 (S.D. Tex. 1999) ...........................................................................38

*In re Linerboard Antitrust Litig.*,
2004 WL 1221350 (E.D.Pa. June 2, 2004) .............................................................37

*In re Plastic Tableware Antitrust Litig.*,
1995 WL 723175 (E.D. Pa. Dec.4, 1995) ...............................................................38

*In re Residential Doors Antitrust Litig.*,
1998 WL 151804 (E.D. Pa. Apr.2, 1998) ...............................................................38

*In re Southern Ohio Corr. Facility*,
175 F.R.D. 270 (S.D. Ohio 1997) ...........................................................................37

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...................................................................28

*In re U.S. Oil & Gas Litig.*,
967 F.2d 489 (11th Cir. 1992) .................................................................................11

*Ingram v. Coca-Cola Co.*,
200 F.R.D. 685 (N.D.Ga.2001) ..............................................................................37

*Johnson v. Ga. Highway Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) ..................................................................................30

*Johnson v. NPAS Sols., LLC*,
  975 F.3d 1244 (11th Cir. 2020) ............................................................36

*Kilgo v. Bowman Trans.*,
  789 F.2d 859 (11th Cir. 1986) ..............................................................20

*Kornberg v. Carnival Cruise Lines, Inc.*,
  741 F.2d 1332 (11th Cir. 1984) ............................................................21

*Lee v. Ocwen Loan Servicing, LLC*,
  No. 14-CV-60649, 2015 WL 5449813 (S.D. Fla. Sep. 14, 2015) ...........11

*Leslie v. Redstone Fed. Credit Union*,
  No. 5:20-CV-00629-LCB, 2023 WL 11985252 (N.D. Ala. Oct. 20, 2023)............26

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) .......................................... 13, 14

*Lonardo v. Travelers Indem. Co.*,
  706 F. Supp. 2d. 766 (N.D. Ohio 2010) ................................................38

*Montoya v. PNC Bank, NA*,
  No. 14-204740-CIV, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016).........29

*Morgan v. Public Storage*,
  301 F. Supp. 3d 1237 (S.D. Fla. 2016) .................................................35

*Perez v. Asurion Corp.*,
  501 F. Supp. 2d 1360 (S.D. Fla. 2007) .................................................14

*Petersen v. Am. Gen. Life Ins. Co.*,
  No. 3:14-CV-100-J-39JBT, 2019 WL 11093816 (M.D. Fla. Oct. 22, 2019)...........12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ............................................................................23

*Pinto v. Princess Cruise Lines, Ltd.*,
  513 F. Supp. 2d 1334 (S.D. Fla. 2007) ...............................26, 27, 29, 30

*Poertner v. Gillette Co.*,
  618 F. App'x 624 (11th Cir. 2015) .......................................................29

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
  601 F.3d 1159 (11th Cir. 2010) ............................................................22

*SEC v. Davison*,
  No. 8:20-cv-325-MSS-MRM, 2023 WL 2931641 (M.D. Fla. Mar. 8, 2023) ..........27

*Smith v. Wm. Wrigley Jr. Co.*,
  No. 09-cv-60646, 2010 WL 2401149 (S.D. Fla. June 15, 2010) ...........................11

*South v. Progressive Select Ins. Co.*,
  Nos. 19-cv-21760-WPD/Becerra, 19-cv-21761-WPD/Becerra, 2023 WL 2733548
  (S.D. Fla. Mar. 21, 2023) .................................................................29

*Stahl v. MasTec, Inc.*,
  No. 8:05-CV-1265-T-27TGW, 2008 WL 2267469 (M.D. Fla. May 20, 2008).......29

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir.2003) ..............................................................26

*Steiner v. Williams*,
  2001 WL 604035 (S.D.N.Y. May 31, 2001).............................................26

*Varacallo v. Mass. Mut. Life Ins. Co.*,
  226 F.R.D. 207 (D.N.J. 2005) ............................................................39

*Venerus v. Avis Budget Car Rental, LLC*,
  674 F. Supp. 3d 1107 (M.D. Fla. 2023) .................................................37

*Wal- Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ........................................................................21

*Walco Invs. v. Thenen*,
  975 F. Supp. 1468 (S.D. Fla. 1997).....................................................33

Waters v. Int'l Precious Metals Corp.,
  190 F.3d 1291 (11th Cir. 1999)........................................28, 29, 30, 35

*Wolff v. Cash 4 Titles*,
  No., 03–22778–CIV, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ...................35

<u>Statutes</u>                                                                    <u>Page(s)</u>

28 U.S.C. § 1715(b) ...........................................................................40

Fla. Stat. § 83.40 (3)(a) ........................................................................................... 2

Fla. Stat. § 83.49(3)(a) ..................................................................................... 5, 7, 9

Florida Statutes § 83.49 ........................................................................................... 5

Rules                                                                                        Page(s)

Fed. R. Civ. P. 23(a)(3) ..........................................................................................21

Fed. R. Civ. P. 23(c)(2)(B) .....................................................................................23

Fed. R. Civ. P. 23(e) ......................................................................................... 11, 12

Fed. R. Civ. P. 23(e)(1)(B) .....................................................................................10

Fed. R. Civ. P. 23(e)(2) .................................................................................... 10, 11

Fed. R. Civ. P. 23(g)(1)(A)(B) and Rule 23(e)(2)(A) ..............................................22

Fed. R. Civ. P. 23(h) ..............................................................................................18

RULE 23 ......................................................................................................... 23, 24

Rule 23(a) ..............................................................................................................20

Rule 23(a) and (b)(3) ....................................................................................... 10, 20

Rule 23(a)(1) ..........................................................................................................20

Rule 23(a)(2) ..........................................................................................................21

Rule 23(a)(4) .................................................................................................... 21, 22

Rule 23(b)(3) ..........................................................................................................22

Rule 23(e)(1) ..........................................................................................................11

Rule 23(e)(2)(B) .....................................................................................................15

Rule 23(e)(2)(C) .....................................................................................................15

Rule 23(e)(2)(C)(iii) ...............................................................................18

Rule 23(e)(2)(D) ....................................................................................18

Rule 23(e)(3) ..................................................................................... 12, 18

Other Authorities                                                                    Page(s)

15 Newberg and Rubenstein on Class Actions § 15:87 ............................................34

Plaintiff, Douglas Chiodini, and Defendant, BH Management Services, LLC, (collectively, "Parties") by and through undersigned counsel, respectfully submit and through undersigned counsel, hereby file this motion for final approval of class action settlement, certifying the Settlement Class, appointing Class Counsel, appointing Plaintiff as Class Representative, approving incentive awards, awarding attorneys' fees and costs, and entering final judgment.

## I.    INTRODUCTION

This case involves tenant security deposits withheld by the Defendant, BH Management Services, LLC ("Defendant" or "BH Management"). Plaintiff alleges that his security deposit was withheld without complying with the notice requirements of Florida law. Defendant asserts that it was in compliance with Florida law at all times.

Importantly, Defendant only retained the security deposits of tenants who are alleged to owe money at the time of move out.  One of the complications of such a case is that the underlying amounts owed remain due and owing even if the security deposits were fully refunded.  Thus, a key component of this settlement is that Defendant has agreed not to pursue those amounts returned and waived under this settlement agreement.  Such relief could not have been awarded even at a trial on the merits.

Accordingly, the Proposed Settlement provides the Class with complete relief. For most, it includes a refund of a substantial portion of the security deposit funds that were withheld and a complete release from Defendant pursuing those funds post-

settlement. For those with a balance remaining over and above the total amount of the security deposit, they will receive 3x the amount of cash relief in the form of debt relief and a complete release from Defendant pursuing those funds in the future. This represents better relief than would have been available at trial.

The Proposed Settlement was reached after months of negotiation through mediation with mediator, Lance Harke. This Proposed Settlement is a fair, reasonable and equitable result for the Settlement Class particularly considering the risks, uncertainties, and expense associated with the first case of its kind in Federal Court.

## II.    SETTLEMENT OVERVIEW

This is a class action for alleged violations of Florida Residential Landlord and Tenant Act ("FRLTA"), Fla. Stat. § 83.40 (3)(a) arising out of Defendant, BH Management Services, LLC's practices regarding the retention of all or a part of tenants' security deposits after move out. Specifically, Plaintiff alleges that Defendant unlawfully withheld his security deposit without providing him with the required statutory notice, damaging him in an amount equal to the amount of the security deposit withheld. Defendant disputes that it was required to send Plaintiff the notice due to an alleged exception in the applicable statute. Per the statute, if the statutory notice is not provided or if no exception applies, a landlord forfeits the right to impose a claim upon the security deposit but may file an action for damages after returning the security deposit to the tenant.

Through discovery it was determined that 5,999 whose security deposits were withheld may not have received a notice of intent to retain the security deposit in the

form required by the FRLTA in the provided move-out statement. Although, some of those tenants may have received a separate notice.

### a. Monetary Relief.

Under the Settlement Agreement, Defendant will create a fund to issue refunds of up to 50% of the security deposit amount withheld to the Class Members. (Dkt. 82-1[2], "Settlement Agreement"). If Defendant's records reflect that a class member owes Defendant a remaining balance, then the eligible amount of refund funds will be applied toward payment of any remaining balance reflected by Defendant's records. Upon issuing the refunds and any alleged debt balance reduction, Defendant will release its right to pursue the balance created by the refunded security deposit amount from the Class members. It will not release its right to pursue any additional balances that its records reflect are owed. This will result in class refund relief in the amount of $572,851.66 in cash payments. BH also waives the right to pursue the debt obligation created by return of the $572,851.66 in cash payments. Therefore, the same amount of cash payments also qualifies as debt relief.[3] Security Deposit Class Members will receive a waiver of BH's right to recover the returned $572,851.66. Therefore, this amount also qualifies as debt relief. Security Deposit Balance Class Members will receive $419,178.47 balance debt relief. In addition, if the class representative award

---

[2] The Settlement Agreement was amended to add administration costs and to name ALCS as the administrator.

[3] In the Motion for Preliminary Approval, Plaintiff did not present the amounts returned in cash as debt relief. Instead, the amounts were described as BH "waiving" the right to pursue those amounts returned as a part of settlement. [Dkt. 71, p.6].

of $10,000 and the attorney's fees and costs of $417,148.34 are approved, the total relief will be brought to $1,000,000, waiver of $572,851.66 in monies returned, and balance relief of $419,178.47, combined totaling $1,992,030.13.

### b. The Unique Risks and Difficulties of the Action.

Significant legal hurdles remained in the case. First, although the parties completed briefing of summary judgment (Dkts. 33, 35, 36, 39) and class certification (Dkts. 44, 52), neither such motion had been set for hearing nor been ruled upon. Ruling on class certification would have necessitated an appeal to the Eleventh Circuit and at least an eighteen-month delay.

### c. Overwhelming Class Support.

Based on the lack of objections and only six opt outs, the Settlement Class has overwhelmingly approved the Proposed Settlement. Through multiple mailing efforts to provide notice to all Settlement Class Members, the claims administrator delivered notice successfully to 82.65% of the Class. Ex. A, Decl. ALCS, ¶ 7. While Plaintiff's Counsel and the administrator fielded over a dozen calls and emails from Settlement Class Members, only six Settlement Class Member have opted-out or objected as of the date of this Motion. Ex. B, Decl. J. Newsome, ¶ 16.[4]

## III.    BACKGROUND

Florida Statutes § 83.49 states:

> Upon the vacating of the premises for termination of the
> lease, if the landlord does not intend to impose a claim on

---

[4] The deadline for objections to the Proposed Settlement was October 9, 2025. (Dkt. 82-2 at 5-6). No objections have been received or filed with the Court. The deadline for opt outs was October 9, 2025 (*Id.*). Six opt outs have been received by the administrator.

the security deposit, the landlord shall have 15 days to return the security deposit together with interest if otherwise required, or the landlord shall have 30 days to give the tenant written notice by certified mail to the tenant's last known mailing address of his or her intention to impose a claim on the deposit and the reason for imposing the claim. **The notice shall contain a statement in substantially the following form**:

> This is a notice of my intention to impose a claim for damages in the amount of __ upon your security deposit, due to __. It is sent to you as required by s. 83.49(3), Florida Statutes. You are hereby notified that you must object in writing to this deduction from your security deposit within 15 days from the time you receive this notice, or I will be authorized to deduct my claim from your security deposit. Your objection must be sent to (landlord's address).

> ***If the Landlord fails to give the required notice within the 30-day period, he forfeits his right to impose a claim upon the security deposit.***

Fla. Stat. § 83.49(3)(a). (emphasis added). This language is not required to be provided to tenants who terminate a lease or vacates or abandons the premises without the required 7 days' notice.

On July 7, 2021, Chiodini signed a lease for an apartment owned by PBH Barrington, LLC, and managed by Defendant, BH Management. Pursuant to the Lease, Chiodini paid a security deposit in the amount of $400. The lease quoted the security deposit notice requirements of FRLTA, Fla. Stat. § 83.49(3)(a). Pursuant to the Lease, Chiodini moved out on the last day of the one-year lease, July 18, 2022. Upon move out, Defendant claimed that Chiodini had damaged the carpet and blinds, among other items. On July 27, 2022, BH Management sent, via email, a letter to

Chiodini stating that he owed $402.32 after the application of his $400 security deposit already withheld, and attached a moveout statement reflecting the cost of the carpet cleaning and blinds replacement. The moveout statement did not contain the language from the FRLTA quoted above, however, as noted above, the Defendant's position is that this language was not required to be provided to Plaintiff.

This lawsuit was filed on January 27, 2023. After extensive discovery, including multiple depositions, dozens discovery discussions amongst the Parties, and emails regarding electronically stored information and accounting records, the records provided in discovery reflected approximately 5,999 tenants for whom a security deposit was withheld and a Move Out Statement substantially similar to that of the Plaintiff's was sent.

On February 9, 2024, Defendant revised its Move Out Statement form and practices to include the FRLTA language quoted above on all move out statements.

## IV.    THE SETTLEMENT

On March, 7, 2024, the parties held their first mediation conference, which resulted in an impasse. Thereafter, significant additional discovery was completed and Defendant retained new counsel.

Following extensive discovery, briefing of summary judgment (Dkts. 33, 35, 36, 39) and briefing of the class certification issue (Dkts. 44, 52), the Parties conducted two more mediation sessions on September 23, 2024, and October 29, 2024.

The Parties reached an Amended Settlement on September 8, 2025.

### a.  The Proposed Settlement Classes.

Defendant has agreed not to oppose certification of the following classes (collectively the "Settlement Class") for settlement purposes only:

> **The Security Deposit Class:** All persons in the State of Florida who (a) leased a dwelling unit in a property managed by BH Management; (b) did not receive a Fla. Stat. §83.49(3)(a) compliant notice letter; (c) had any portion of their security deposit retained; and (d) do not owe an alleged balance to BH Management or to the property owner.

There are 5,207 members of the Security Deposit Class.

> **The Security Deposit Balance Class**: All persons in the State of Florida who (a) leased a dwelling unit in a property managed by BH Management; (b) did not receive a Fla. Stat. §83.49(3)(a) compliant notice letter; (c) had any portion of their security deposit retained; and (d) allegedly owe a balance to BH Management or to the property owner.

There are 827 members of the Security Deposit Balance Class.

### b. Monetary Relief.

Pursuant to the settlement, BH shall create a Settlement Class fund with an amount of $572,851.66 payable within thirty (30) days of final approval (the "Settlement Amount"). The amount will be dispersed as follows:

Each Security Deposit Class member who does not seek to exclude him/herself from the settlement will receive a Settlement Payment equal to the amount of 50% of each Security Deposit Class member's security deposit, totaling $541,528.00. By way of example, assume that Security Deposit Class member "X" had her $400 security deposit withheld by BH Management at the end of her lease due to $400 in paint damage within the apartment. Under the Settlement, X would receive a $200 cash

refund and a release from BH Management that it will not attempt any further collection against X for paint damage ($200 non-monetary debt relief).  Absent this Settlement, even if the total security deposit was returned to X as a result of a trial judgment, she would still owe BH Management $400 for the paint damage to the apartment.  This Settlement prevents that from happening.  The value of this debt relief to the Security Deposit Class is set forth in the non-monetary relief section below.

The Security Deposit Balance Class Members owe money to Defendant over and above the total amount of their security deposit.  Each Security Deposit Balance Class member who did not seek to exclude him/herself from the settlement will be eligible for up to 50% of the security deposit amount withheld. However, as further described below, 50% of the security deposit withheld will first be applied to the balance that Defendant's records reflect is owed, but in an amount equal to three times (3x) 50% of the security deposit withheld. Those class members whose debt balances are fully paid off with eligible settlement funds remaining will receive a pro rata cash payment.  BH Management will also waive its right to pursue the balance its records reflect is owed, up to an amount equal to three times (3x) 50 percent of the security deposit withheld.  It will not waive its right to recover any remaining balance after crediting three times (3x) 50 percent of the security deposit withheld. The Security Deposit Balance Class will receive $31,323.66 of cash relief and $419,178.47 of balance debt relief.

By way of example, assume that Security Deposit Balance Class member "Y" had his $500 security deposit withheld by BH Management at the end of his lease due

to $750 in paint damage to the apartment. Even with the entire security deposit paid toward the debt, Y still carries a $250 balance owed. Under the settlement, Y's $250 refund payment is first multiplied by 3 and then applied to the balance owed ($250). When applying the $750 of debt relief to the balance of $250, Y only exercised 33.3% of his debt relief available. Therefore, Y will receive a $167.50 cash refund payment, $250 of balance debt relief, and a release from BH Management for the entire $750 in alleged paint damage.

These amounts will be automatically calculated and checks issued. Any portion of the Settlement Amount remaining after the time for cashing checks has expired shall be paid to Legal Services of Greater Miami, as *cy pres* recipient.

### c. Non-Monetary Contractual Relief.

Florida's Residential Landlord Tenant Act provides that Defendant is permitted to file an action for damages against Class members it alleges owes monies *after* Defendant returns the unlawfully retained security deposits. Fla. Stat. §83.49(3). In other words, even if the tenants have the right to receive their security deposit back, the landlord still has the legal right to collect the amounts that were previously paid with security deposit funds. Accordingly, in exchange for Plaintiff and Class members releasing all claims against Defendant, its related entities, and owners of the subject properties (as set forth in the Settlement Agreement and referred to therein as BH Entities), Defendant and those entities have also agreed to release and forego the collection of any amounts allegedly due as a result of amounts being refunded or any

debts waived pursuant to the Settlement Agreement. The Plaintiff and the Class will

therefore receive non-monetary benefits in the form of debt relief as follows:

> Non-Monetary Class Relief in the Form of Waived Amounts: $572,851.66
>
> Security Deposit Balance Class Non-Monetary Debt Relief:  $ 419,178.47
>
> Total Value Non-Monetary Relief:  $992,030.13.

Importantly, the legitimacy of the outstanding amounts has not been challenged

in this case.  And, discovery revealed that Defendant pursues these debts by obtaining

judgments in court and retaining the services of a debt collector to secure payment.

[Dkt. 74-1]. These debts have real value to the Defendant and it is in the best interest

of the Class that these balances are no longer subject to collection under this Settlement

Agreement.

## V.    MOTION FOR FINAL APPROVAL

As a prerequisite to directing Notice of the Settlement, this Court determined it

would likely be able to approve the Proposed Settlement and certify the Settlement

Class. (Dkts. 80 and 82); *see* Fed. R. Civ. P. 23(e)(1)(B). Nothing has changed to affect

the Proposed Settlement since Notice was issued, and this Court should therefore

conclude that the Proposed Settlement remains fair, reasonable, and adequate, and

that it meets the certification requirements of Rule 23(a) and (b)(3), and grant Final

Approval. *See* Fed. R. Civ. P. 23(e)(2).

### a. Legal Standard for Final Approval.

The Eleventh Circuit recognizes the strong public and judicial policy favoring

the pretrial settlement of class-action lawsuits. *See, e.g., In re U.S. Oil & Gas Litig.*, 967

F.2d 489, 493 (11th Cir. 1992); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-CV-60649, 2015 WL 5449813 *4 (S.D. Fla. Sep. 14, 2015). "A class may be certified 'solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue.'" *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149 at *3 (S.D. Fla. June 15, 2010) (citation omitted). Approving a class action settlement is a two-step process. *Fresco v. Auto Data Direct, Inc.*, No. 03–61063–CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). The Court previously granted preliminary approval of the Proposed Settlement. (Dkts. 80 and 82).

"Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493. In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The Proposed Settlement is clearly within the range of reasonableness, and it satisfies all standards for Final Approval, including Plaintiff's obligations under Rule 23(e)(1). This Court should "[focus] on the primary procedural considerations and substantive qualities that should always matter to the decision whether to approve the proposal." *See* Fed. R. Civ. P. 23(e), Committee Notes on Rules–2018 Amendment.

Rule 23(e)(2) includes a mandatory but non-exhaustive set of final approval criteria:

> (A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Final Approval is warranted under the applicable factors.

### b. The Proposed Settlement Meets the Rule 23(e) Criteria for Final Approval.

#### i. Adequacy of Representation.

In evaluating the adequacy of class counsel and the class representative, the Advisory Committee on the Federal Rules of Civil Procedure ("Committee") has instructed courts to consider whether class counsel and plaintiffs "had an adequate information base" before negotiating and entering into the settlement. *Petersen v. Am. Gen. Life Ins. Co.*, No. 3:14-CV-100-J-39JBT, 2019 WL 11093816, at *6 (M.D. Fla. Oct. 22, 2019). The proper inquiry is whether the plaintiffs and class counsel engaged in enough discovery to afford them an "adequate appreciation of the merits of the case[.]" *Id*. at *5 (footnote and additional citation omitted). *See also Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677, 2008 WL 649124, at *11 (S.D. Fla. Jan. 31, 2008) ("Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation."). Here, Plaintiff is an adequate

representative. His interests are coextensive and do not conflict with the class members that he seeks to represent. Plaintiff has the same interest in the settlement relief, and the absent Settlement Class Members have no diverging interests. Likewise, Class Counsel are experienced in complex class action litigation, including similar class actions challenging unlawful fees, and they devoted substantial time and resources to vigorous litigation, evaluating the merits, and weighing the benefits against further litigation. Ex. B, Decl. J. Newsome, ¶¶ 2–16; (Dkt. 71-3).

Courts consider the stage of proceedings at which a settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). As detailed above, the Proposed Settlement here was reached after contested litigation, class certification briefing, dispositive motion briefing, and extensive discovery was conducted. Ex. B, Decl. J. Newsome, ¶ 4–6. Class Counsel went into a settlement conference with Lance Harke armed with full knowledge of the potential damages at issue and knowing the arguments for and against the merits and class certification. *Id.* Thus, Class Counsel was (and remains) well-positioned to evaluate the Plaintiff's claims' strength, Defendant's defenses, and prospects for success.

### ii. Settlement Was Negotiated at Arm's Length

"A proposed settlement action should be approved as long as it is 'fair, adequate and reasonable and it is not the product of collusion between the parties.'" *Borcea v. Carnival Corp.,* 238 F.R.D. 664, 672 (S.D. Fla. 2006) (quoting *Bennett,* 737 F.2d at 986);

*see also Lipuma*, 406 F. Supp. 2d at 1318-19 (settlement approved where "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

Here, the Proposed Settlement is the result of extensive, arm's-length negotiations between experienced attorneys with the help of an experienced mediator familiar with class action litigation and with the legal and factual issues at the center of this Action. Class Counsel are particularly experienced in this type of litigation, certification, trial, and settlement of class action cases. Ex. B, Decl. J. Newsome, ¶ 2; (Dkt. 71-3). This experience proved beneficial to Plaintiff and the Settlement Class during Settlement negotiations. Class Counsel conducted significant discovery before mediation, enabling them to gain a complete understanding of the evidence related to central issues, including damages and liability, and prepare for well-informed settlement negotiations. *Burrow v. Forjas Taurus S.A.*, No. 16-21606-CIV, 2019 WL 4247284, at *8 (S.D. Fla. Sept. 6, 2019) (the record showed substantial discovery, which supported finding that the settlement was reasonable). The negotiations that culminated in the Proposed Settlement were conducted over many months, were at arm's-length and extensive, and overseen by the mediator. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

For these reasons and those discussed related to attorneys' fees below, there was no fraud or collusion in arriving at the Proposed Settlement. *Bennett*, 737 F.2d at 986. Thus, Rule 23(e)(2)(B) is satisfied.

### iii. Adequacy of the Settlement Relief.

Class Counsel have significant class action experience and strongly believe the Proposed Settlement is fair, reasonable, and adequate when considering the risks of litigation. Ex. B, Decl. J. Newsome, ¶ 18; (Dkt. 71-3). The Court may rely upon the judgment of experienced counsel. *See, e.g.*, *In re Equifax*, 999 F.3d 1247, at 1274 (11th Cir. 2021) (trial judge "should be hesitant to substitute its own judgment for that of counsel") (internal quotations omitted). Rule 23(e)(2)(C)'s factors also show the Proposed Settlement is fair, reasonable, and adequate.

#### 1. Settlement Benefits are Outstanding.

In determining a settlement's fairness given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). *See also In re Checking Account Overdraft Lit.*, 830 F. Supp. 2d 1330, 1346 (S.D. Fla. 2011) (a recovery of between 9% and 45% was an "exemplary result"). When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330

(5th Cir. 1977). "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Here, the range of possible recoveries (or lack thereof) demonstrates that the Proposed Settlement is fair, adequate and reasonable. Although a jury could award greater damages at trial, it is also a certainty that Defendant would have still possessed the legal right to collect the amounts owed and which were paid with security deposit funds. Receiving $100 now, with a complete release, is preferable to $200 at trial where the Defendant can later file suit to recover the full $200. Given the risks associated with class certification and appeal, and the reality of prevailing on this claim at trial, the monetary and non-monetary recovery is fair, adequate and reasonable.

### 2. *Costs, Risks and Delay of Trial and Appeal.*

While Plaintiff's counsel believes they have a strong case, Defendant had significant legal defenses to the underlying claims and class certification. The case would have certainly drawn at least one appeal to the Eleventh Circuit, by either side. In addition, issues of first impression regarding whether the FRLTA may be applied to a property management company operating state-wide and employing systemic practices could have limited the extent and reach of the case, namely whether it was limited to one apartment or all one-hundred and twenty-three apartments that BH Management managed during the class period and which are included in this Settlement. Finally, and most importantly, the delays in resolution could have resulted

in greater difficulty in locating a class of transient tenants whom move on a regular basis.

All that is certain is that, with continued litigation, the putative class would face a notably longer wait before receiving any potential recovery, if they received any recovery or other relief at all. Thus, in Class Counsel's experience and informed judgment, the Proposed Settlement represents an excellent class recovery, and the benefits outweigh the risks of continued litigation. *See In re Equifax*, 999 F.3d 1247, 1273 (11th Cir. 2021) ("Settlements also save the bench and bar time, money, and headaches"); Ex. B, Decl. J. Newsome, ¶ 16. This Proposed Settlement provides substantial relief without further delay and avoids the risk of an adverse judgment at trial, an adverse ruling on a dispositive motion, and/or an adverse ruling on appeal. Rule 23(e)(2)(C)(i) is satisfied.

### 3. *Effective Method of Distributing Relief and Processing Claims.*

Each Security Deposit Class member who did not seek to exclude him/herself from the settlement will automatically receive a Settlement Payment equal to the amount of 50% of each Security Deposit Class member's security deposit, totaling $541,528.00. Each Security Deposit Balance Class member who does not seek to exclude him/herself from the settlement will be eligible for up to 50% of the security deposit amount withheld. However, as further described below, 50% of the security deposit withheld will first be applied to the balance that Defendant's records reflect is owed, in an amount equal to three times (3x) 50% of the security deposit withheld.

Although the method that the relief is applied can vary in how it is applied, each Class Member is receiving significant financial relief free and clear from any risk that Defendant will pursue recover of those amounts.

Settlement Class Members will be will be compensated by the same equitable mechanism as other members of the respective Settlement Class through fair, convenient, and effective Settlement Class Member Payments. Ex. B, Decl. J. Newsome, ¶¶ 3–13. Thus, this Settlement satisfies Rule 23(e)(2)(C)(ii).

### 4. Reasonable Terms Relating to Attorneys' Fees.

Whether the attorneys' fees are reasonable on their own terms is a Fed. R. Civ. P. 23(h) analysis. By contrast, under Rule 23(e)(2)(C)(iii), the question is not the fee amount in a vacuum, but rather whether attorneys' fees impact the other settlement terms. Here, attorneys' fees do not impact the other terms of the Proposed Settlement and the attorneys' fees sought are fair, adequate, and reasonable. (Dkt. 82-1).

### 5. Agreements Identified Pursuant to Rule 23(e)(3).

Rule 23(e)(3) states "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). There are no agreements other than what is set forth in the Settlement Agreement itself.

### iv. Equitable Treatment of Settlement Class Members Relative to Each Other - Rule 23(e)(2)(D).

As discussed above, each Settlement Class Member is eligible to receive the same benefits as other members, however the existence of an outstanding balance will

dictate the application of that relief to the balance first and/or in cash refund. Thus, the Proposed Settlement treats all Settlement Class Members equally and equitably.

      **v.**  **The Opinions of Class Counsel, Plaintiff, and Absent Settlement Class Members Favor Approval of the Proposed Settlement.**

Class Counsel endorse the Proposed Settlement. Ex. B, Decl. J. Newsome, ¶¶ 2–18.  The Court should give "'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'" *Ferron v. Kraft Heinz Foods Co.*, No. 20-CV-62136-RAR, 2021 WL 2940240, at *12 (S.D. Fla. July 13, 2021) (citations omitted).

There has been no opposition to the Proposed Settlement from any Settlement Class Member. *See* Ex. A, Decl. ALCS, ¶ 10. As of this filing, there are six opt-outs and no objections. *See id.* at ¶ 9. Although the deadline for objections and exclusions was October 9, 2025 if any receipt of such occurs before the Final Fairness Hearing, Plaintiff's counsel will advise the Court.

This lack of opposition to date is a clear indication the Settlement Class agrees with the Proposed Settlement. Even when a timely objection is made, it is settled law that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Ass'n for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002). Here there are 6 objectors of over 6,000 Class Members.

Thus, in Class Counsel's experience and informed judgment, the Proposed Settlement represents an excellent recovery and the benefits of the Proposed Settlement outweigh the risks and uncertainties of continued litigation, including, the risks, time, and expenses associated with continuing to litigate, dispositive motions, class certification proceedings, completing a trial, and any appellate review.

## VI.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE[5]

This Settlement Class meets the requirements for certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3). Generally, an action may be certified for class treatment for settlement purposes. *See, e.g., Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). The Court conditionally certified the Settlement Class, (Dkts. 80 and 82), and there is no reason to deviate from that ruling.

### a.  The Settlement Class Satisfies the Rule 23(a) Requirements.

*Numerosity:* Here, there are 6,034 Settlement Class Members.  This number — combined with the complex nature of the claims brought — easily and indisputably satisfies the numerosity requirement under Rule 23(a)(1) as joinder is impractical.  *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied with at least 31 class members "from a wide geographical area").

*Commonality:* "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention

---

[5] Defendant does not oppose class certification for purposes of the settlement, but does not otherwise concede that certification is appropriate in this case.

"must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal- Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (citation omitted). Because these claims all depend on the same alleged common practice and common legal questions (whether BH Management violated the FRLTA by taking security deposits without first providing notice) the commonality requirement of Rule 23(a)(2) is satisfied for purposes of certifying the Settlement Class described herein.

**Typicality:** Fed. R. Civ. P. 23(a)(3) typicality is satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984). Here, the Named Plaintiff's facts surrounding his security deposit reflect the typical experience of each Settlement Class Member. The Named Plaintiff alleges Defendant's process was systemic and used identical template documents in withholding Plaintiff's security deposit as well as the security deposits of the rest of the Class. As a result, collectively the claims of the Plaintiff are typical of the claims of the class members he seeks to represent.

**Adequacy:** Rule 23(a)(4) of the Federal Rules of Civil Procedure also requires that a named plaintiff provide fair and adequate protection of the interests of the class. "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the

class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty*, 513 F.3d 1314, 1323 (11ᵗʰ Cir. 2008) (internal citations omitted).

Plaintiff has no interests antagonistic to the class he seeks to represent. Plaintiff has participated fully in discovery, gathered voluminous documents in support of Plaintiff's complaints, reviewed drafts, attended multiple mediations, and participated in settlement negotiations. Ex. B, Decl. J. Newsome, ¶ 11.  From the inception of this case, Plaintiff has been focused on ending the practice of BH Management withholding security deposits without complying with the notice requirements of the FRLTA. *Id.*

Plaintiff has also met their burden by retaining counsel experienced in class action litigation. Ex. B, Decl. J. Newsome, ¶ 1–11; (Dkt. 71-3). Class counsel will be deemed adequate if they are shown to be qualified, adequately financed, and possess sufficient experience in the subject matter of the class action. *City of St. Petersburg v. Total Containment, Inc.*, 265 F.R.D. 630, 651 (S.D. Fla. 2010).

Therefore, Plaintiff and Class Counsel satisfy Rule 23(a)(4). Fed. R. Civ. P. 23(g)(1)(A)(B) and Rule 23(e)(2)(A) are also satisfied.

### b.  The Settlement Class Also Satisfies the Rule 23(b)(3) Requirements.

Rule 23(b)(3) requires a "direct impact" of common issues of law and fact "on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotations omitted). Rule 23(b)(3) predominance is readily

satisfied because Plaintiff contends that the legal claims all arise from (1) the common practice of withholding security deposits without complying with the notice requirements of the FRLTA.   Any individual issues, are greatly outweighed by common issues. For these reasons, the Court should certify the Settlement Class.

## VII.   THE NOTICE PROGRAM AND CLAIMS PROCESS SATISFY DUE PROCESS AND RULE 23

In addition to having personal jurisdiction over Plaintiff, who is a party to this Action, the Court also has personal jurisdiction over all members of the Settlement Class because they were sent Notice and received due process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The Notice Program implemented by the Claims Administrator conforms with the procedural and substantive requirements of due process and Rule 23 that provide that settlement class members are sent notice of the settlement and an opportunity to be heard and participate in the litigation. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice process mechanics are within the Court's discretion, subject to broad reasonableness standards imposed by due process.

Here, following the Court's approval of the Notice Program, the Claims Administrator directed notice to the Settlement Class via direct mail. *See* Ex. A, Decl. ALCS, ¶¶ 4. A Long Form Notice was also available to the Settlement Class on the Settlement Website. *Id.* ¶ 8. To ensure notice reached as many Settlement Class Members as possible, the Claims Administrator performed reasonable address traces for the initial Notice and to re-mail any Notices returned undeliverable. *Id.* at ¶ 4. All of the Notices included important Settlement information, including how to opt-out

or object, when a claim form for additional relief would be sent and where to submit it, and where to find more information about the Action or to contact Class Counsel.

The Notice fully apprised the Settlement Class of their rights. *Id*. Additionally, the Notice Program was designed to satisfy Rule 23 and due process considerations. Ex. B, Decl. J. Newsome, ¶ 17; Ex. A, Decl. ALCS, ¶¶ 5–7. As Rule 23 requires, the Notices generally described the Proposed Settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward to be heard, and the Notices contained all the critical information required to apprise Settlement Class members of their rights. Ex. B, Decl. J. Newsome, ¶ 17. Thus, the Notice Program was adequate to allow Settlement Class Members with adverse viewpoints to come forward and be heard.

Here, notice reached approximately 82.65% of the Settlement Class. *Id*. at ¶ 17. This is actually a very good reach rate for cases involving transient tenants. Class counsel has participated in the administration of six prior cases involving transient tenants and in each of those 75%-85% was the typical successful delivery rate. *Id*. Notice here was the best notice that is practicable and is equivalent or superior to notice campaigns approved in similar class actions.

## VIII.  Attorneys' Fees, Costs, and Class Representative Awards[6]

---

[6] Defendant does not oppose Plaintiff's request for attorney's fees in this matter in accordance with the Settlement Agreement, but it does not join in Plaintiff's request otherwise agree or concede that the particular method for calculating attorney's fees set forth by the Plaintiff is appropriate.

Since the Eleventh Circuit's 1991 ruling in *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11ᵗʰ Cir. 1991), attorney fees have been calculated in this Circuit based on a percentage of the common fund. As set forth in Plaintiff's Motion for Preliminary Approval, the proposed Settlement has a total combined value of $1,992,030.13. The requested attorneys' fee of $396,148.34 amounts to 20% of the combined value of the settlement. Thus, the requested fee is within the range of reasonableness under the factors listed in *Camden I* and this request should be approved as a result.

### A. The Total Relief to Class.

As an initial matter, this settlement is a constructive common-fund and not a traditional common-fund. See, *In re Home Depot Inc.*, 931 F.3d 1065, 1080 (11th Cir. 2019)(explaining distinction). As a result, the settlement should be governed by common fund principles although the attorney's fees were negotiated separately.[7] *In re Home Depot Inc.*, 931 F.3d 1065, 1080 (11th Cir. 2019) (citing *In re Heartland Payment Sys., Inc.*, 851 F. Supp. 2d 1040, 1072 (S.D. Tex. 2012) (providing an overview of the constructive common-fund doctrine).

When determining the total value of a class action settlement for purposes of calculating the attorneys' fee award, courts consider not only the compensatory relief,

---

[7] The parties are confident that mediator, Lance Harke, of Upchurch Watson, one of the most respected class action mediation firms in the state, would provide a declaration attesting to the 3-part mediation that resulted in first a settlement of the class relief and, on a separate day of mediation, resolution of the attorney's fees entitlement.

but also the economic value of any prospective non-monetary relief obtained for the class. *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1342 (S.D. Fla. 2007) (citing to *Staton v. Boeing Co.,* 327 F.3d 938, 974 (9th Cir.2003) ("[C]ourts should consider the value of the injunctive relief obtained as a relevant circumstance in determining what percentage of the common fund class counsel should receive as attorneys' fees.") (internal quotation and citation omitted); *Steiner v. Williams,* 2001 WL 604035, at *4 (S.D.N.Y. May 31, 2001) ("Although the settlement in this action did not involve the payment of money by the defendants, counsel may nonetheless recover a fee if the settlement conferred a substantial non-monetary benefit."). Courts in this circuit permit parties to present the total value of a settlement in the traditional common-fund approach including non-monetary such as debt relief. *Leslie v. Redstone Fed. Credit Union*, No. 5:20-CV-00629-LCB, 2023 WL 11985252, at *4 (N.D. Ala. Oct. 20, 2023) ("The parties value the Settlement at $3,976,031, which they calculate as the combined value of the common-fund monetary relief and debt forgiveness.).

In this case, the value of the common fund includes four components: (1) $572,851.66 in monetary relief; (2) $572,851.66 in waived amounts; (3) $419,178.47 in balance relief; and (3) $417,148.34 in attorney fees and litigation costs. The total value of the constructive common fund is $1,992,030.13. Therefore, the award of $396,148.34 in attorney's fees represents 20% of the constructive common fund.

## B. The Requested Fee is Appropriate Under the Percentage Method.

Class Counsel's request of $396,148.34 in attorneys' fees, evaluated under a constructive common fund analysis and applying Eleventh Circuit precedent,

constitutes approximately 20% of the total benefits made available to the Settlement Class and should be considered reasonable.

Counsel whose work results in a substantial benefit to a class are entitled to a fee under the common benefit doctrine. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989). It also ensures those who benefit are not "unjustly enriched." *Van Gemert*, 444 U.S. at 478. Indeed, due to the alignment of interests and the sake of efficiency, the percentage method should generally be used when like here the settlement's value can be reliably calculated. The Eleventh Circuit's controlling authority is *Camden I*, which holds attorneys' fees in common fund cases must be calculated using the percentage rather than the lodestar approach.[8] 946 F.2d at 774-75. "Where class action settlements are

---

[8] A lodestar cross-check is not required in this Circuit. *See, e.g.*, *In re Equifax*, 999 F.3d at 1280 n.26 (11th Cir. 2021). But "courts . . . sometimes apply a rough lodestar 'cross-check' to assess the reasonableness of the percentage-based fee. *In re Ethicon Physiomesh Flexible Compos. Mesh Prod. Liab. Litig.*, No. 1:17-md-02782-RWS, 2022 WL 17687425, at *6 (N.D. Ga. Nov. 14, 2022). Any cross-check should not "impose" the lodestar approach "through the back door." *See, e.g.,* SEC v. Davison, No. 8:20-cv-325-MSS-MRM, 2023 WL 2931641, at *3 (M.D. Fla. Mar. 8, 2023) (citations omitted). Here, Class Counsel's lodestar as of the filing of this Motion is $350,000, translating essentially to no lodestar multiplier. Ex. B, Decl. J. Newsome, ¶ 17, demonstrating the reasonableness of the requested fee. *See Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (citation omitted) (noting lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5, while 'three appears to be the average.'"). *See also Desue v. 20/20 Eye Care Network, Inc.*, No.

concerned, courts will often classify the fee arrangement as a 'constructive common fund' that is governed by common-fund principles even when the agreement states that fees will be paid separately." *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, 931 F.3d 1065, 1080 (11th Cir. 2019). This methodology may apply when the class counsel's attorney's fees are capped by agreement, as here. *Id.*; *See also* In re Johnson & Jonson Aerosol Sunscreen Mktg. Sales Pract. and Prod. Liab. Litig., No. 0:21-md-3015-SINGHAL/Valle, 2023 WL 2284684 (S.D. Fla. May 4, 2023) (approving defendant's separate payment of attorneys' fees and costs under a constructive common fund).

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (quoting *Camden I*, 946 F.2d at 774). Nonetheless, "[t]he majority of common fund fee awards fall between 20% to 30% of the fund" – though "an upper limit of 50% of the fund may be stated as a general rule." *Id.* (quoting *Camden I*, 946 F.2d at 774-75); *see also* Waters v. Int'l Precious Metals Corp., 190 F.3d 1291, 1294-95 (11th Cir. 1999), cert. denied, 530 U.S. 1289 (2000) (approving fee award where district court

---

21-CIV-61275-RAR, 2023 WL 4420348 (S.D. Fla. July 8, 2023) (approving attorneys' fee request where class counsel presented a negative lodestar multiplier).

determined benchmark should be 30% and then adjusted the fee award higher in view of the circumstances of the case). The fee request falls within this accepted range.

Additionally, Eleventh Circuit precedent clearly states the calculation should include *all* potential relief made available to the class, not just the amount Settlement Class Members choose to claim and what Defendants actually pay. *See Waters v. Intern. Precous Metals Corp.*, 190 F.3d 1291, 1297 (11th Cir. 1999) (for purposes of calculating attorneys' fees, approving valuation based on total value of relief available, as "[t]he fact that there were a reduced number of claimants had no effect at all on the amount each class member received"). Indeed, "[t]he Supreme Court has approved the practice of basing attorneys' fees off the total possible amount recoverable by members of the class, not the total amount actually recovered, as the 'right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel.'" *Arkin v. Pressman*, 38 F.4th 1001, 1006 n.4 (11th Cir. 2022) (citing *Van Gemert*, 444 U.S. at 480); *see also South v. Progressive Select Ins. Co.*, Nos. 19-cv-21760-WPD/Becerra, 19-cv-21761-WPD/Becerra, 2023 WL 2733548 (S.D. Fla. Mar. 21, 2023), *report and recom. adopted on* April 3, 2023 at Dkt. 258; *Poertner v. Gillette Co.*, 618 F. App'x 624, 628 n.2 (11th Cir. 2015) ("While no published opinion of ours extends *Camden I*'s percentage-of-recovery rule to claims-made settlements, no principled reason counsels against doing so."). *See also, e.g.*, *Montoya v. PNC Bank, NA*, No. 14-204740-CIV, 2016 WL 1529902, at *16 (S.D. Fla. Apr. 13, 2016); *Pinto*, 513 F. Supp. 2d at 1339; *Stahl v. MasTec, Inc.*,

No. 8:05-CV-1265-T-27TGW, 2008 WL 2267469, at *1 (M.D. Fla. May 20, 2008). Thus, the attorneys' fees should be judged on the value of all the relief made available to the Settlement Class.

Here, the net benefit to the class is $1.992 Million. This number does not include and attribution of value to the fact that Defendant has ceased the violative practices as a result of this litigation. Therefore, the fee award of $396,148.34, constitutes only 20% of the common fund, which is wholly reasonable given the time and risk involved in this novel case.

## C. The Johnson Factors Support the Requested Attorneys' Fees.

The requested award meets the *Camden I* guidelines and, at approximately 20% of the class benefits, is consistent with the threshold approved by the Eleventh Circuit. Therefore, it is justified under the case law and the facts. *See, e.g., Waters*, 190 F.3d at 1295 (approving fee of 33 1/3%); *In re Checking Account Overdraft Litig.*, No. 1:09-MD-02836-JLK, 2014 WL 11370115, at *13 (S.D. Fla. 2014) (awarding fees of 30%); *Pinto*, 513 F. Supp. 2d at 1342 (*id.*). In selecting the percentage in a particular case, a district court should apply the factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), as well as any other pertinent factors. *See Camden I*, 946 F.2d at 772.

The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772. A consideration of the *Johnson* factors, as shown below, supports the reasonableness of the requested fee.

### a. The Time and Labor Required.

This action was filed on January 27, 2023. (Dkt. 1). Thereafter, Plaintiff and their counsel were sent on extremely complicated discovery hunt that is not necessarily reflected in the record. In short, Defendant's prior counsel, whom no longer serves as its counsel, produced voluminous ESI that was not accurate. Through investigation, hiring of consultants, and months of meet & confer efforts, Plaintiff's counsel finally obtained accurate Class information and reviewed the same. Ex. B, Decl. J. Newsome, ¶ 4–5. At the end of that almost eight-month process, when Defendant retained the undersigned counsel at Shutts & Bowen, LLP, the parties were able to resolve these deficiencies without the intervention of the Court. *Id.*, ¶ 6. This is the primary reason why the time and volume of labor required far exceed what the Court may have expected from this dispute based purely on the briefs that have been docketed.

### b. The Novelty and Difficulty of the Questions.

"It is common knowledge that class action suits have a well-deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. "Attorneys should be appropriately compensated for accepting complex and difficult cases." *Chis v. Peerless Indem. Ins. Co.*,

No. 5:14-cv-277-MTT, 2016 WL 9185305, at *7 (M.D. Ga. Nov. 17, 2016) (citing

*Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 1:04-cv-3066-JEC, 2012 WL

12540344, at *3 (N.D. Ga. Oct. 26, 2012). "'Undesirability' and the risks and difficulty

of the litigation should be evaluated from the standpoint of class counsel when they

commenced the suit—not retroactively, with the benefit of hindsight." *Id.* (citations

omitted).

        In addition to the discovery difficulties, this case is one of the first and is the

largest case to date involving FRLTA violations by a property manager in Florida. *Id.*

This case also represents the first such case that has been fully briefed on contested

class certification. *Id.* In sum, this is not a proven area of law with decades of legal

support for the theory.

**c. The Skill Requisite to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys.**

        The next factors courts consider in approving attorney fees is the skill required

and the skill, experience, and expertise of the attorneys, which are overlapping factors.

*See Gevaerts v. TD Bank*, No. 11:14-cv-20744-RLR, 2015 WL 6751061, at *12 (S.D. Fla.

Nov. 5, 2015) ("In the private marketplace, counsel of exceptional skill commands a

significant premium. So too should it here."). That Class Counsel faced challenges and

obtained relief for the Settlement Class demonstrates their skill, experience, and

reputation.

        Based on the record, the Court can determine the quality of representation that

the class received from the pleadings, dispositive motion, and class certification. Class

32

Counsel's work required the acquisition and analysis of detailed facts and law. In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure. Class Counsel possesses these attributes, and their participation added value to the Settlement Class's representation. Ex. B, Decl. J. Newsome, ¶¶ 1–11.

Assessing Class Counsel's quality of representation, the Court should also consider opposing counsel. *See Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) ("[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"). Defendant was represented by very capable counsel with experience defending national class actions, Shutts & Bowen, LLP.

### d. Preclusion of Other Employment.

But for this Action, Class Counsel would have spent time on other cases. Class Counsel worked hundreds of hours on this matter. *Id.*, ¶ 8. This is especially true considering that V&W only employs five lawyers with limited hours to put towards their entire case portfolio. *Id.* Thus, this factor supports the requested fee.

### e. The Customary Fee.

Complex consumer class litigation customarily is handled on a contingent basis because consumers are unwilling and unable to pay substantial hourly rates, and the potential low individual recovery usually does not justify the economic investment. The usual fee range for common fund cases is 20% to 30%, with 50% as the upper

limit. *Camden I*, 946 F.2d at 774-75. The amount requested here of approximately 20%
is in the middle of this customary range.

### f. Whether the Fee is Fixed or Contingent.

This Action was prosecuted on a contingent basis. If Class Counsel had not
achieved a recovery, they would have received nothing and would have suffered
significant out-of-pocket losses due to the costs they advanced. Ex. B, Decl. J.
Newsome, ¶ 8. This risk justifies the requested fee.

In fact, a contingency fee arrangement often justifies an increase in the award
of attorneys' fees. This rule helps assure that the contingency fee arrangement endures.
If this "bonus" methodology did not exist, very few lawyers could take on the
representation of a class client given the investment of substantial time, effort, and
money, especially in light of the risks of recovering nothing. *Behrens*, 118 F.R.D. at
548, *aff'd* 899 F.2d 21 (11th Cir. 1990) (citations omitted); § 15 Newberg and
Rubenstein on Class Actions § 15:87, n.5 (6th ed.) ("A lawyer who both bears the risk
of not being paid and provides legal services is not receiving the fair market value of
his work if he is paid only for the second of these functions. If he is paid no more,
competent counsel will be reluctant to accept fee award cases.") (citation omitted).

### g. The Amount Involved and the Results Obtained.

The most important factor in determining the appropriate fee award in a
common fund case is generally considered to be the results obtained for the class.
*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204-05 (S.D. Fla. 2006).
Class Counsel secured excellent results for the Settlement Class despite the challenges

the Action presented. Other courts have held this factor favors the requested fee even where the settlement involved a lesser percentage of total potential damages. *See, e.g., Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1255-56 (S.D. Fla. 2016) (settlement for 20% of total potential damages weighed in favor of requested fees of 33 1/3% of settlement value). Most importantly, Class Counsel put an end to the alleged practice of failing to comply with the FRLTA when withholding security deposits. The total relief available to the Settlement Class is modestly valued at $1.992 Million.

### h. Awards in Similar Cases.

Awards in similar cases more than justifies the requested fees, which are, as a percentage, below those approved in similar cases. *See, e.g., Waters*, 190 F.3d at 1295 (11th Cir. 1999) (33 1/3%); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d. 1330, 1358 (S.D. Fla. 2011) (30%); *Columbus Drywall*, 2012 WL 12540344, at *6 (awarding fee of 33.3% and listing cases awarding fees based on similar or higher percentages); *Wolff v. Cash 4 Titles*, No. 03–22778–CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) (noting that fees in the Eleventh Circuit are "roughly one-third" of the benefit to the class and listing cases awarding fees of 30% or higher). One-third of the settlement benefits is typically sought for attorneys' fees and approved in the Eleventh Circuit. Considering this, the requested fee of 20% is below the awards in similar cases.

For all the foregoing reasons, the Court should award the requested $396,148.34 for attorneys' fees.

### D. The Court Should Reimburse Class Counsel for Their Costs.

Class counsel has requested $21,000 for litigation costs reasonably and necessarily incurred to successfully prosecute this Action. The Parties engaged two mediators to mediate this case. First, the parties mediated with retired Judge Fred Lauten. Second, the parties mediated with Lance Harke two additional times resulting in the Settlement Agreement. Plaintiff incurred over $15,000 of mediator fees alone in trying to resolve this case. In addition, investigation costs, ESI consultants, Westlaw charges, deposition transcript costs, and other administrative costs exceed the $21,000 requested. Ex. B, Decl. J. Newsome, ¶ 8. "[C]ourts normally grant expense requests in common fund cases as a matter of course." *Gonzalez v. TCR Sports Broadcasting Holding, LLP*, No. 1:18-CV-20048-DPG, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (citations omitted). The Court should thus approve Class Counsel's request for costs to be included in the Attorneys' Fees and Costs Payment.

### E. Class Representative Award.

Here, Class Counsel reserved the right to seek a reasonable Service Award for Plaintiff, not to exceed $10,000. Although the Eleventh Circuit precluded Service Awards for cases advancing federal claims in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1260 (11th Cir. 2020), courts within this District have recognized that such awards are still available when state law claims are advanced. *Junior v. Infinity Ins. Co.*, Case No. 6:18-cv-1598-WWB-EJK (M.D. Fla. 2023) ("*Johnson I* examined federal common law, based on a federal cause of action, to arrive at its decision. There is nothing in *Johnson I* to suggest that it is applicable to cases arising under state law.");

*Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107, 1110 (M.D. Fla. 2023).
Here, there are only state law claims at issue.

Traditionally, class representatives have been compensated for the time and
effort in bringing the litigation on behalf of others through what is termed an "incentive
award." Many courts have addressed incentive awards to class representatives as a
means to encourage litigants to bring class litigation, which will further the public
policy underlying the statutory scheme. Incentive awards are common in class action
litigation where, as here, a common benefit has been created for the class. Incentive
awards compensate named plaintiffs for the services they provided and the risks they
incurred during the course of the class action litigation. *Allapattah Servs., Inc. v. Exxon
Corp.*, 454 F. Supp. 2d 1185, 1218-19 (S.D. Fla. 2006)(citing *In re Southern Ohio Corr.
Facility,* 175 F.R.D. 270, 272-76 (S.D. Ohio 1997)). Incentive awards serve an
important function, particularly where the named plaintiffs participated actively in the
litigation. *Id.* (citing *Denney v. Jenkens & Gilchrist,* 230 F.R.D. 317, 2005 WL 388562,
at *31 (S.D.N.Y. Feb.18, 2005)).

While the Eleventh Circuit has not expressly set forth guidelines for courts to
use in determining incentive awards, there is ample precedent for awarding incentive
compensation to class representatives at the conclusion of a successful class action.
*Allapattah Servs.*, 454 F. Supp. 2d at 1218-19. In fact, "'[c]ourts routinely approve
incentive awards to compensate named plaintiffs for the services they provided and
the risks they incurred during the course of the class action litigation.'" *Ingram v. Coca-
Cola Co.,* 200 F.R.D. 685, 694 (N.D.Ga.2001); *In re Linerboard Antitrust Litig.,* 2004 WL

1221350, at *18-19 (E.D.Pa. June 2, 2004) (awarding $25,000 for each of the five class

representatives); *In re Lease Oil Antitrust Litig.,* 186 F.R.D. 403, 449 (S.D. Tex. 1999)

(granting awards of between $1,000 and $10,000); *In re Residential Doors Antitrust Litig.,*

1998 WL 151804, at *11 (E.D. Pa. Apr.2, 1998) (awarding an incentive award of

$10,000 to each of the four Class representatives); *In re Plastic Tableware Antitrust Litig.,*

1995 WL 723175, at *2 (E.D. Pa. Dec.4, 1995) (granting award of $3,000); *In re

Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 357 (N.D.Ga.1993) (granting

award of $2,000 to plaintiffs that produced documents and awarding $5,000 to

plaintiffs that were also deposed).

In *Cook v. Niedert*, 142 F.3d 1004 (7th Cir. 1998), the Seventh Circuit provided

a list of some pertinent considerations when evaluating an incentive award:

> Because a named plaintiff is an essential ingredient of any class action,
> an incentive award is appropriate if it is necessary to induce an
> individual to participate in the suit. . . . In deciding whether such an
> award is warranted, relevant factors include the actions the plaintiff
> has taken to protect the interests of the class, the degree to which the
> class has benefitted from those actions, and the amount of time and
> effort the plaintiff expended in pursuing the litigation.

*Cook*, 142 F.3d at 1015 (citation omitted).

Incentive awards are frequently approved in class actions where, as here, the

Plaintiff was involved in discovery and litigation activities. Ex. B, Decl. J. Newsome

¶ 11. Extensive involvement encompasses producing documents, responding to

discovery requests, attending or testifying at court hearings, participating in settlement

negotiations, and consulting with class counsel on litigation strategy. *See, e.g.*, *Lonardo

v. Travelers Indem. Co.*, 706 F. Supp. 2d. 766, 787 (N.D. Ohio 2010) (approving

incentive awards of $5,000 to plaintiffs who substantially contributed to litigation and
testified at the fairness hearing); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207,
258–59 (D.N.J. 2005) (approving $10,000 incentive awards to plaintiffs who worked
closely with counsel and were crucial to settlement, $3,000 incentive award to plaintiff
who produced documents, appeared for deposition, and attended the fairness hearing,
and $1,000 incentive award to plaintiff who only played a minor role in settlement
negotiations); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 357–58 (N.D.
Ga. 1993) (approving incentive awards of $5,000 to plaintiffs who appeared for
deposition and $2,500 to plaintiffs who produced documents in discovery).

The requested award of $10,000 is well within the appropriate range given the
cases cited above and the long commitments of the class representative in investigating
the case, participating in discovery, sitting for deposition, and attending three separate
mediation sessions.  Ex. B, Decl. J. Newsome, ¶ 11. Accordingly, the full incentive
award set forth in the Settlement Agreement to the Plaintiff should be approved by this
Court.

## IX.    CONCLUSION

Based on all of the foregoing, Plaintiff respectfully request that the Court grant
Plaintiff's Unopposed Motion for Final Approval. In accordance with the Settlement
Agreement (Dkt. 82-1) this Motion requests the entry of a Final Order and Judgment
that:

>    (a)    certifies the Settlement Class for settlement purposes
>           only;

(b)    finds the Court has personal jurisdiction over all Settlement Class Members and subject matter jurisdiction to approve th[e] Agreement and all Exhibits thereto;

(c)    gives final approval to the Proposed Settlement and directs the Parties and counsel to comply with and consummate the terms of the Agreement;

(d)    finds that Class Counsel and the Named Plaintiff adequately represented the Settlement Class;

(e)    finds that the terms of th[e] Agreement are fair, reasonable, and adequate to the Settlement Class Members;

(f)    finds that the notice set forth in th[e] Agreement (i) constituted the best practicable notice under the circumstances; (ii) was reasonably calculated to apprise potential Settlement Class Members of the pendency of the Action, their right to object to or exclude themselves from the Proposed Settlement, and to appear at the Final Approval Hearing; and (iii) constituted due, adequate, and sufficient process and notice to all Persons entitled to receive notice;

(g)    finds that the Class Action Fairness Act Notice provided by the Claims Administrator on behalf of Defendant complied with 28 U.S.C. § 1715(b);

(h)    finds that the Opt-Out List is a complete list of all Settlement Class Members who have timely requested exclusion from the Settlement Class and, accordingly, neither share in nor are bound by the Final Order and Judgment;

(i)    provides that the Plaintiff, all Settlement Class Members who have not been excluded from the Settlement Class as provided in the Opt-Out List, and their heirs, estates, trustees, executors, administrators, principals, beneficiaries, representatives, attorneys, agents, assigns, and successors, and/or anyone claiming through them or acting or purporting to act for them or on their behalf,

40

regardless of whether they have received actual notice of the Proposed Settlement, have conclusively compromised, settled, discharged, and released all Released Claims against Defendant and the Released Parties, and are bound by the provisions of th[e] Agreement;

(j)    dismisses all claims in the Action on the merits and with prejudice, and without fees or costs except as provided herein, and entering final judgment thereon;

(k)    determines the amount of the Attorneys' Fees Award to Class Counsel;

(l)    appoints American Legal Claims Services, LLC as the Claims Administrator.

## CERTIFICATE OF CONFERRAL

While Defendant does not adopt or agree to all the allegations and arguments set forth herein, Defendant does not oppose the relief sought, provided that the proposed Final Order and Judgment submitted to the Court comports with the terms of the Settlement Agreement. A proposed Final Order is attached as Exhibit C.

Dated: December 12, 2025                    **VARNELL & WARWICK, P.A.**

/s/ Jeffrey L. Newsome, II
Jeffrey L. Newsome, II; FBN: 1018667
Janet R. Varnell; FBN:  0071072
Brian W. Warwick; FBN:  0605573
Pamela G. Levinson, FBN: 538345
Christopher J. Brochu; FBN: 1013897
400 N Ashley Drive, Suite 1900
Tampa, FL  33602
Telephone: (352) 753-8600
Facsimile: (352) 504-3301

41

*jnewsome@vandwlaw.com*
*jvarnell@vandwlaw.com*
*bwarwick@vandwlaw.com*
*plevinson@vandwlaw.com*
*cbrochu@vandwlaw.com*
*ckoerner@vandwlaw.com*

***Attorneys for Plaintiff, and on behalf of all
others similarly situated***

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 12, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Jeffrey L. Newsome, II
Jeffrey L. Newsome, II
